## LINDVALL *v.* WOODS *et al.*

*(Circuit Court, D. Minnesota. February 12, 1891.)*

1. **MASTER AND SERVANT—DUTIES OF THE MASTER.**
   The employer owes to the employe to use ordinary care to select and retain competent co-employes, and not to subject the employe to the negligence of incompetent fellow-workmen; also, to exercise ordinary care to furnish a reasonably safe place for the employe to do his work in; also, to use ordinary care to discover any defect in the structure upon which the employe was required to go in performing his work.

2. **SAME—ORDINARY CARE.**
   Ordinary care is that amount of care which an ordinarily prudent person would exercise under the same circumstances, and which ought reasonably to be observed, taking into consideration all the exigencies of the particular service.

3. **SAME—WHO ARE FELLOW-SERVANTS.**
   Fellow-workmen are in a common employment when each of them is employed in a service or work of such a kind that all the others, in the exercise of ordinary sagacity, ought to be able to foresee, when accepting employment, that it may probably expose them to the risk of injury in case he is negligent.

4. **SAME—WHO IS VICE-PRINCIPAL.**
   A foreman of a gang, vested with the control and supervision of a particular work to be done, and with powers to say not only what shall be done, but how it shall be done, and who has full power and authority to command the men under him in their work, and when the work is under his practical direction and control, save and except as he may receive directions from time to time from his employer, and ordinarily there is no one else present authorized to superintend and direct the work of the men, represents the employer, and is his vice-principal, and for his negligence the employer is responsible.

At Law.

*Arctander & Arctander*, for plaintiff.

*Shaw & Cray*, for defendant.

NELSON, J., *(charging jury.)* This has been a very long and tedious case, but it is interesting from the fact that many important legal questions have arisen, aside from the general interest taken in the testimony with reference to the facts. You have given it such patient attention that it does not seem to me necessary to go very far into the details of the testimony. The counsel have very thoroughly and exhaustively presented the several theories upon which a verdict is asked at your hands. Now, what is the case, gentlemen? The plaintiff, a laborer, brings this action to recover damages against the defendants for injuries which it is alleged he sustained by reason of the negligence of the defendants in the course of his employment; that is to say, he claims that the injuries he sustained were the natural consequence of the negligence of the defendants; that their negligence was the proximate cause of his injury. It appears that the defendants were contractors,—railroad contractors, principally,—and in the spring of 1888 they had a contract to grade somewhere about 10 or 12 miles of the St. Paul & Duluth Railroad, straightening the track; and in doing this it was necessary to do considerable grading outside of the old track. Upon this work were several gangs of men under foremen,—at least two; one under the charge of Mahoney, (not a very large gang,) the other, near Gladstone, under the charge of Murdock, in which gang the plaintiff worked. The work to be

performed by Murdock's gang near Gladstone was to make a cut through a hill, and fill up several hundred feet of low ground, partially marshy; and the manner of doing this work was by extending, as fast as the excavation was made, trestles, and filling in these trestles according to their height, and thus making the grade continuous. The plaintiff was employed on the work about the 2d of April, 1888. I might say that in doing this work the defendants under Murdock had men who worked in the pit, men who worked on the dump, and a man by the name of Johnson who was assigned to frame the bents of the trestle-work which was to be put up, and erect it, and who, with the aid of other laborers, was to place stringers of different length upon these bents; that upon this temporary trestle-work, what is called a "Petler" car railroad track was to be constructed, in order to bring out on it the cars, each of which contained about a cubic yard of dirt, excavated from the cut. The plaintiff claims that he was injured by the negligence of Murdock, who represented the company, in setting him to work upon an insecure and unsafe structure, (this trestle,) the erection of which Murdock had intrusted to Johnson, an employe; that Johnson was an incompetent person for the work; and that he is entitled to recover for the injuries sustained by reason of that negligence. The defendants deny that there was any negligence on their part; deny that Mr. Murdock, if the injuries resulted from his negligence, was a representative,—a vice-principal; also deny that Johnson was an incompetent person within their knowledge; and the defense urged is that, if there was any negligence, and the plaintiff was injured, it was either the negligence of himself or of his co-employes working with him.

The issues as presented by the pleadings, affirming and denying the facts, as I have stated to you, are to be determined upon the evidence which has been introduced tending to support the several claims, and the law as I deem it proper to give you. You will thus see, gentlemen, that negligence is the gist of this action, and it may not be improper for me at this time to indicate to you what is negligence,—what is legal negligence. Negligence is defined to be the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the particular situation, or doing what such a person, under the existing circumstances, would not have done. That is the definition which commends itself to most courts as being concise and satisfactory. Now, this negligence being alleged, the burden of proof is upon the plaintiff, by the preponderance of the evidence, to satisfy you that there was negligence on the part of the defendants, or any one who represented them. This negligence cannot be presumed; it must be affirmatively proven, and it is to be determined by you upon the preponderance of all the evidence. It is not sufficient that the plaintiff proves that he has sustained damage by reason of some omission of the defendants; he must also prove that the defendants in such omission violated a legal duty or obligation which they owed the plaintiff by reason of the relation established between them of employer and employe. The defendants are not the insurers of the safety of the plaintiff. They do not guaranty abso-

lutely his safety, and it is necessary for the plaintiff to establish by evidence facts and circumstances from which it may fairly be inferred that his injury resulted from the want of some precaution which the defendants might and ought to have resorted to; and, in addition, the plaintiff should also show with reasonable certainty what particular precaution should have been taken by the defendants. To prove his case, so as to entitle the plaintiff to recover, he must satisfy you by the preponderance of evidence—*First*, of defendants' negligence in failing to perform some duty which they owed him; *second*, that the defendants' negligence was the proximate cause of the injury which he sustained; and you have then what may be called, *third*, the question of the incompetency of Johnson, who, it is claimed, was a fellow-servant, and was, to defendants' knowledge, incompetent for the discharge of the work which he was set to in connection with the plaintiff; and, if those points are resolved in favor of the plaintiff, then another question will arise, to which I will call your attention hereafter. Now, what is the proximate cause? For the plaintiff must prove that if he was injured, as claimed, the negligence of the defendants was the proximate cause of the injury. The proximate cause of an injury is that cause which immediately precedes and directly produces the injury, without which the injury would not have occurred; and it is claimed here that this injury was the natural sequence of the negligence of the defendants, without which it would not have occurred.

This raises a question which it is necessary for me to instruct you upon, and that is, the duties of the employer (in this case the employers) and the duties of the plaintiff. The law imposes upon the defendants the duty to use ordinary care to select and retain competent servants or co-employes with the plaintiff, and not to subject him to the negligence of incompetent fellow-workmen; and also to exercise ordinary care to furnish a reasonably safe place for plaintiff to do his work, and a reasonably safe structure upon which plaintiff was required to go to do his work, such as is reasonably calculated to insure safety when doing his work; also to use ordinary care to discover any defect, if such exist, in the structure upon which the plaintiff was required to go in performing his work; to use ordinary diligence to see that the place where the plaintiff's work called him was in such condition as, from the nature of the work and of plaintiff's employment, he had a right to expect it would be kept; for the plaintiff had a right to assume that all reasonable attention would be given by the defendants to his safety, so that he would not be carelessly and needlessly exposed to risks which might be avoided by the exercise of ordinary care and caution. I say "ordinary care," and it is necessary for me to define what is meant by ordinary care. Ordinary care is defined to be that amount of care which an ordinarily prudent person would exercise under the same circumstances; that is, such care as, taking into consideration all the exigencies of the particular service, ought reasonably to be observed; and the claim here, you will recollect, gentlemen, is that this structure which has been exhibited to you in the models was insecure and unsafe, the bents and stringers

not properly tied, braced, and bolted, so as to render it reasonably safe, and that the defendants, through Murdock, their representative, as the plaintiff claims, failed to exercise ordinary care and caution in making that trestle-work safe. If the defendants have exercised, or if the evidence shows to your satisfaction that the defendants exercised, all the care and caution which is imposed upon them for the safety of the plaintiff in doing his work, the law does not hold them liable for a defect in this trestle or structure which could not be discovered by the exercise of reasonable care; that is, even if this structure was insecure, unsafe, and defective, the law does not hold the defendants liable for any such defect which was unknown to them, and which could not be discovered by them in the exercise of reasonable care. Now, on the other hand, the plaintiff assumed certain risks by virtue of his contract of service, and the relation established between the defendants and himself. The plaintiff assumed all the risks incident to the character of the work which he was employed to do, and, in the absence of any statute, (and we have none in our state relative to individuals or corporations, outside of railroads,) there is included the risk of injury by the negligence of his fellow-workmen in the same common employment. The general doctrine is well settled that an employer is not liable for any injury to an employe caused by the negligence of a co-employe in the same common employment. So it is necessary for me to instruct you, who are fellow-workmen in the same common employment. Fellow-workmen are in a common employment when each of them is employed in a service or work of such a kind that all the others, in the exercise of ordinary sagacity, ought to be able to foresee, when accepting employment, that it may probably expose them to the risk in case he is negligent. I might say here that the theory of plaintiff is that Murdock was a vice-principal, as it is called,—a substitute of the defendants in charge of that work,— and that he was not a co-employe; and that the rule which I have laid down to you with reference to the assumption of risk on the part of the plaintiff does not apply to him, for he was not a co-employe of plaintiff. The duties imposed by law upon the defendants, which I have stated to you with regard to selection of workmen and a safe structure, cannot be delegated by the employer to any one, whether a fellow-employe of the injured party or not, so as to exempt the defendants from all liability for injury sustained by the negligent exercise of these duties. The duties may be delegated, but, if this is done, the person to whom they are delegated, and to whom the execution of them are intrusted, becomes the vice-principal or substitute of the employer, and, if he negligently performs them, and a workman of the common employment to whom the master owes these duties is injured, he has a right of action for damages on that account from the common employer; in other words, the employer is responsible for the negligence of an employe who stands as his direct representative, invested with his own authority over a particular business and over inferior employes, and the latter, when injured by such negligence, are not barred by the doctrine of fellow-employe, as I have stated it to you.

It is claimed, I say, on the part of the plaintiff, first, that Mr. Murdock was a vice-principal. Now when can a person be said or be called legally the vice-principal of another, so as to make the employer responsible for his acts,—his negligent acts? In this case it is for you to determine whether, as is claimed on the part of the plaintiff, Mr. Murdock was the representative of the defendants, and, if he was, whether the plaintiff has satisfied you, by the preponderance of evidence, that the injury occurred on account of his negligence. When a foreman of a gang is vested with the entire management, control, and supervision of a particular work to be done, so as to say not only what shall be done, but how it shall be done, and he has full power and authority to command the men under him in the work, and the work is under his practical direction and control, save and except as he may receive directions from time to time from his employer, and ordinarily there is no one else present and authorized to superintend and direct the work of the men, then he represents the employer,—he stands for the employer. It is claimed that, within that principle, the foreman, Murdock, was the representative of the defendants. And you will recollect, gentlemen, that testimony has been offered tending to show that Mr. Woods, of the firm of Woods & Lovejoy, one of the defendants here, had the superintendency of this 12 miles—10 or 12 miles—of road which was to be graded and built, and that occasionally, from time to time,—according to his own testimony, nearly every day, according to the testimony of others, twice or three times a week,—he visited these different gangs of men, at least this gang under the charge of Murdock. Now, in regard to the claim made by plaintiff that Murdock was a vice-principal, if the preponderance of all the evidence satisfies you that the defendants delegated to Murdock, although he is called "foreman," the care and management of the work to be performed at this cut, and the work to be performed by this gang was under the practical direction and control of Murdock, subject only to the directions given by him personally, as the local foreman, from time to time by the defendant Woods, and to the latter's oversight and examination, when he occasionally, or two or three times a week, came to the work, and if Murdock had the authority to employ and discharge the men working there in his gang, and had direct control of their movements so far as concerned the work in his charge, and that ordinarily there was no one else present and authorized to superintend and direct the work or the laborers, then he represented the defendants. "He stood," as was expressed by a distinguished judge, "in their shoes, whether they fit him or not," and his negligence is so far the defendants' negligence that they are responsible to the plaintiff on account of it to the extent he was injured in consequence thereof; in other words, if this work required care and oversight for the proper performance thereof, and the evidence satisfies you that Murdock for that purpose was placed in charge of it, and he was clothed with the duty of supervising and managing the work, and had the power of control and direction over the gang of men under him, including the plaintiff, in the details of the work, and the plaintiff and others were required to obey his commands,

orders, and instructions, then, in executing that duty of control, direction, supervision, and management, Murdock represents the defendants, and for his negligence in performance thereof the defendants are liable, if his negligence was the proximate cause of the plaintiff's injury, whether he is designated as a foreman, construction boss, or by any other name.

On the other hand, if you should believe from the evidence that Murdock was simply a foreman of a gang in which the plaintiff was employed, both he and plaintiff, as occasion required, working side by side, the former merely leading the work, and giving immediate direction to it and to the men, sometimes in the presence of Mr. Woods, as superintendent, then Murdock and plaintiff were fellow-employes in a common employment, and defendants are not liable or responsible for Murdock's negligence. And if you believe that he was simply a foreman, as I have described to you, then the defendants would be entitled to a verdict in this case, unless the plaintiff has proved that the defendants were negligent in the employment of an incompetent servant, who built the structure which it is claimed was unsafe, and that his negligence was the proximate cause of the injury, and unless there was contributory negligence on the part of the plaintiff himself, to which I shall briefly call your attention hereafter. You will recollect that one claim here is that the defendants failed in their duty to employ a competent person; that is, that Johnson was an incompetent employe for the work to which he was assigned. It was the duty of the defendants, as I briefly stated to you, which they personally owed to the plaintiff, to use ordinary care to select fellow-employes of sufficient care and skill to make it probable that he would not be subjected to injury from their failure to possess these qualities; and, if the defendants themselves, or any representative who was authorized to employ the men, failed to perform this duty, they would be liable to the plaintiff for any injuries sustained in consequence of such negligence or incompetency on the part of fellow-workmen thus negligently employed as might be reasonably anticipated as not unlikely to happen from such incompetency, provided they knew of it, or could, by the exercise of ordinary care and caution on their part, have ascertained it. You have heard the testimony, and I shall not repeat it, in regard to the competency and skill of the workman Johnson, who, all the testimony tends to show, was designated to frame the bents, and who, it is claimed on the part of plaintiff, the testimony further tends to show was designated as the person to erect them, with the assistance of other employes that he could call upon, and to place the stringers in position upon them, so that these Petler railroad tracks could be laid out for the purpose of the work. Now it is for you to determine from all the evidence, the burden of proof being upon the plaintiff, the alleged incompetency of Johnson, by the preponderance of evidence, and also whether he was the person designated for that particular work of putting that structure in condition, so that it could be operated as a temporary trestle, upon which the dirt as excavated could be hauled out and filled in. Of course, if he was an incompetent per-

son, and his incompetency was known to the defendants, and if the injury to the plaintiff was occasioned by the negligence of the workman Johnson in that behalf, then the defendants would be responsible, and the plaintiff would be entitled to recover for such damages as you think he is justly entitled to under the circumstances of the case. But the mere fact that this thing fell down, even if you should believe that it was defective and unsafe, is not sufficient evidence to warrant you in finding that the defendants had knowledge that Johnson was an incompetent person for this service; that is, the mere fact that in this particular instance the defect, if there was any defect or insecurity of the structure, was due to a failure of skill on the part of Johnson, that alone is not sufficient to warrant you in finding that the defendants knew that Johnson was an incompetent person. You must take all the evidence in the case, and determine what knowledge the defendants had preceding this work here, before Johnson was employed by them, and from all the evidence—all the attending circumstances—decide and settle the issue as to whether he was incompetent for the work intrusted to him, and, if so, if defendants had knowledge of such incompetency.

Now if you should find all these issues in favor of plaintiff, or if you should find that Murdock was the vice-principal of the defendants, and that his negligence was the proximate cause of this injury, then the plaintiff would be entitled to a verdict; or if you should find that, on the other hand, Murdock was a mere foreman, and not a vice-principal, but that the defendants were negligent in employing Johnson, an incompetent person, and that his injuries were caused by such negligence, then the plaintiff would also be entitled to a verdict, unless he himself was guilty of negligence which contributed to cause his injury. If Lindvall went out upon that structure before the time of this accident, as it is claimed, several times, and if he worked upon the dump in view of it, and knew what was going on there, it was his duty to exercise care and caution on his part to avoid any danger, and it was his duty to see that he was not exposing himself unnecessarily to danger in doing this work. It is true that he had a right to rely upon the superior information of the defendants, or the person who represented them, or Johnson, if you believe that he was designated to put up this structure; but if you believe that, by the exercise of reasonable care and caution on his part, he might have discovered that this structure was unsafe, if you should believe that it was unsafe, and nevertheless went out upon the structure, then he contributed to his own injury, and he cannot recover, though you should find that the defendants themselves were negligent.

Now, gentlemen, I think I have presented this case to you pretty thoroughly, so far as the claim made and the theories advanced by the plaintiff and the defendants. If you should come to the conclusion that the evidence proves no negligence on the part of the defendants, then they are entitled to a verdict. If, on the other hand, you believe that the preponderance of evidence proves negligence on the part of the defendants, then the plaintiff would be entitled to a verdict, unless guilty of contributory negligence, and the question then

is presented, what amount should the plaintiff recover for the injuries sustained? There are certain elements which the jury are to take into consideration in determining the amount the plaintiff, injured under such circumstances, should recover, if he has satisfied the jury that his injury was sustained by the negligence of a person who owed him a legal duty, and they are all founded upon compensation. Nothing else, gentlemen, but compensation for the injuries sustained is the plaintiff entitled to recover. Of course that, to some extent, is left to the sound judgment and discretion of the jury, based upon all the evidence in the case, and the facts disclosed during the progress of the trial. Of course the plaintiff is entitled to compensation for loss of time on account of the injuries sustained. He is further entitled to compensation for pain and suffering. Now that must be left entirely to the jury. What would compensate a person for pain and suffering? You cannot measure it in dollars and cents; at least it must be left to the sound discretion of the jury, and their sound judgment, bearing in mind all the time that it is a compensation, and not what may be called "smart money," which he is entitled to receive. He is also entitled to compensation for any temporary disability, temporary injury, or permanent injury, and the testimony here tends to show that he at least never will regain his eye-sight; also, what impairment there may be to his bodily strength, for the evidence here discloses beyond any dispute that one leg is shorter than it was. He is not the same man that he was before the injury. At the same time you must graduate, or at least measure, the damages on the theory of compensation only; that being left to your sound discretion, gentlemen. It is for you to say on the whole case, if you believe the plaintiff is entitled to a verdict, what amount will compensate him for the injury, bearing in mind that you are to decide this case upon the strict legal rights of the parties and the cold facts which have been developed here in testimony, not upon sympathy for the plaintiff, who is in affliction. That is not an element to be taken into consideration by the jury, for jurors and courts would be less than human if they did not sympathize with a fellow-man in affliction. You can take the case, gentlemen.

The jury returned a verdict for plaintiff for $3,800.