Davis v. Mercer Lumber Co.

## DAVIS v. MERCER LUMBER COMPANY.

[No. 20,288. Filed March 28, 1905.]

1. **APPEAL AND ERROR.**—*Transcript.*—*Original Bill of Exceptions.*—*How Made Part of Record.*—Where the precipe calls for the original bill of exceptions to be certified upon appeal, and the transcript shows that such bill is so included in the transcript, such bill is a part of the record. p. 415.
2. **SAME.**—*Bill of Exceptions.*—*Right to File Two Bills.*—Where the trial court grants time to a party in which to file "a bill of exceptions," such party is not thereby restricted to the filing of a single bill. p. 415.
3. **SAME.**—*Peremptory Instructions to Return Verdict.*—*Whether in Record.*—Where the bill of exceptions shows that at the close of plaintiff's evidence defendant filed a motion for peremptory instructions in its favor, and such motion was sustained and a verdict returned in accordance therewith, such motion and ruling are properly in the record. p. 416.
4. **MASTER AND SERVANT.**—*Factory Act.*—*Guarding Dangerous Machinery.*—*Crime.*—It is the imperative duty, under the factory act, for the master to guard dangerous machinery, and a failure to do so is a crime. p. 420.
5. **SAME.**—*Violation of Factory Act.*—*Negligence.*—It is ordinarily negligence *per se* to disregard a statutory duty. p. 420.
6. **SAME.**—*Negligence.*—*Proximate Cause.*—*Assumption of Risk.*—It is sufficient to render the master liable to show that he violated his statutory duty to guard dangerous machinery and that such violation was the proximate cause of the injury, and the fact that the servant knew of such violation was not an assumption of the risk thereof and will not alone defeat his recovery. p. 420.

164 413
164 482
164 492
164 494
164 544
164 413
165 112
165 300

164 413
168 41
168 410

164 413
169 460
j170 38
170 232
170 630

164 413
171 499

Davis *v.* Mercer Lumber Co.

7. NEGLIGENCE. — *Contributory.* — *Burden.* — The burden to establish plaintiff's contributory negligence rests upon the defendant. p. 422.

8. SAME.—*Defendant's Anticipation of Injury.*—It is not necessary that the defendant should have anticipated the exact injury that resulted from his negligence. It is sufficient if by ordinary care he should have known that some injury might happen from such negligence. p. 422.

9. NEGLIGENCE.—*Proximate Cause.*—Where an efficient cause is shown it will be taken as the proximate cause of the injury unless another cause not incidental to such efficient cause appears to have intervened and caused such injury. p. 423.

10. SAME.—*Proximate Cause.*—*Question of Law or Fact.*—The proximate cause of an injury is an essential fact in a case of negligence, and under the evidence may be a question of law for the court, or of fact for the jury. p. 423.

11. MASTER AND SERVANT.—*Injuries.*—*Proximate Cause.*—*Evidence.*—*Question for Jury.*—Where the evidence shows that plaintiff was working at defendant's unguarded ripsaw; that he was pushing a board along the table and ripping it, and by some cause, either by slipping on the floor covered with sawdust or by reason of such board having a knot in it, his arm was caught on such saw and permanently injured, and that it was defendant's duty to carry away the sawdust, the question whether defendant's negligence was the proximate cause was one for the jury. p. 424.

12. TRIAL.—*Directing Verdict.*—*When Proper.*—Where the evidence most favorable to the party and all reasonable inferences which can be drawn therefrom wholly fail to establish one or more of the essential elements of the action, the court may direct a verdict. p. 425.

From Blackford Circuit Court; *Edwin C. Vaughn,* Judge.

Action by Walter M. Davis against the Mercer Lumber Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Sydney W. Cantwell* and *Luther B. Simmons,* for appellant.

*J. A. Hindman* and *Blacklidge, Shirley & Wolf,* for appellee.

JORDAN, J.—Appellant, while at work in the planing-mill of appellee, was injured by a circular saw by reason of the alleged negligence of appellee in not guarding said saw,

as provided by §7087i Burns 1901, Acts 1899, p. 231, §9.
Answer, a general denial. There was a trial by jury, and at
the close of the evidence the court, on motion of appellee,
and over the objections and exceptions of appellant, directed
a return of a verdict in favor of the appellee. Motion for a
new trial, assigning as a reason therefor this ruling of the
court, was denied, and judgment was rendered against ap-
pellant for costs.

1. The principal question presented is whether, under
the evidence, a verdict should have been directed. At the
very threshold of this question we are confronted with the
contentions of counsel for appellee that the evidence is not
in the record. Since the filing of appellee's brief, however,
the record appears to have been corrected by *certiorari,* and
the transcript now discloses that it contains the original bill
of exceptions, embracing the evidence certified up by the
clerk of the lower court at the express request of appellant.
This, under §638a Burns 1901, Acts 1897, p. 244, is suffi-
cient to make the original bill a part of the transcript, and
there is no longer in this respect any grounds for appellee's
objections.

2. Upon overruling appellant's motion for a new trial
the court granted 120 days to file "a bill of exceptions."
Two bills appear to have been filed within the time pre-
scribed—number one, which embraces the evidence, and
number two, which exhibits the ruling of the court in di-
recting the verdict with appellant's exceptions thereto.
Counsel for appellee argue that the filing of the latter bill
was unauthorized, and therefore it is not a part of the
record, for the reason that the leave granted by the court to
file "a bill of exceptions" did not include two separate bills,
but must be limited to the filing of a single bill. To place
such a construction on the leave granted by the trial court
to file a "bill of exceptions" would be very narrow and tech-
nical. Of course, if the court had granted appellant leave

to file within the prescribed time "all bills of exceptions," there would be no room for argument, but certainly it would be unreasonable to hold that by the leave granted it was intended to require appellant to exhibit by a single bill of exceptions all of the rulings of the court of which he complained. The contention of appellee on this point is decided adversely to it in the case of *Wagner* v. *Weyhe* (1905), *ante,* 177, and cases there cited.

3. Appellee insists that, even if it can be held that bill of exceptions number two is properly in the record, it is of no avail, because it contains no instruction given by the court to the jury to return a verdict in favor of appellee. It is argued that the bill in question merely shows a conclusion to the effect that the court charged the jury to find for the defendant, without setting forth the instruction given. The bill, however, discloses that at the close of the evidence in the cause the defendant filed a motion, that the court instruct the jury to return a verdict in its favor, which motion the court sustained, and accordingly directed the jury to return the following verdict: "We, the jury, find for the defendant." With this direction the jury complied, and was immediately discharged by the court from further consideration of the cause. The ruling of the court in directing the verdict and the exceptions taken by appellant are fully and properly exhibited by the bill in controversy. That the action of the court under the circumstances is sufficiently disclosed to present the question involved in this appeal is certainly evident. Directing a verdict in a cause is not in the sense or nature of an instruction advising the jury in respect to matters of law, by which they are to be governed in considering the case, but, on the contrary, it is a peremptory order or direction by the court to the jury to return the particular verdict as directed. Any order or direction by the court to that effect, if properly disclosed by the record, is sufficient to present such ruling on appeal to this court.

Appellant was the only witness who testified in regard to the manner in which the accident occurred. His evidence alone discloses substantially the following facts: On and for some time prior to said accident appellee, an incorporated company, was engaged in operating a lumber yard and planing-mill at Hartford City, Indiana. Ripsaws were used in its mill for ripping boards and other lumber. It appears that these saws were set in what is known as saw-tables, at which the employes of appellee (appellant among the number) were required to work in ripping boards and lumber by means of these saws. Sometime about the middle of May, 1900, appellant was employed by appellee to work in its planing-mill. A part of his employment was to work at the saw-tables and operate the saws in ripping or cutting lumber. He was to perform such other work in connection with the planing-mill and lumber yard as he might be directed to do by appellee's foreman. He continued to work for appellee from the time he was first employed until the 30th or 31st day of July, 1900. The saw-table at which he worked contained a slot which was about ten or twelve inches from the west side of the table as the operator faced the table. The saw protruded about four or five inches above the top of the table. The latter was so arranged that it could be adjusted by being either raised or lowered. The ripsaw, however, was stationary, the axle thereof being under the table. The distance of the saw-teeth above the table depended upon the distance that the table was either raised or lowered. There was a gauge on the right side of the saw used to regulate the width of the piece of lumber intended to be ripped. In ripping boards it was necessary for the operator to walk to and from the saw-table, holding the board or lumber which was to be ripped between his hands. In pushing the board into the saw, the right arm of the operator frequently and necessarily would pass over the top of the saw and sometimes close thereto. While a board was being pushed

through the saw, the operator had to stand at the rear end of the board and place his thumbs on the ends thereof. In pushing the board against the saw his thumbs would pass on either side of the saw, and at such time his right hand and arm would necessarily come close to the saw. On the 30th or 31st of July, 1900, appellant, while in the service of appellee, as aforesaid, was engaged in the line of his duty in operating one of the saw-tables. The table had been so adjusted that the ripsaw was runing about —— inches above the top of the table. This saw was wholly unguarded, had no shield or protection of any kind whatever to prevent appellant's arm from coming in contact with the teeth thereof. Appellee had wholly failed to guard the saw as required by the statute. While engaged in ripping a board at this table on the occasion in question, in like manner as he had previously done during the period of his employment, and while operating the saw as he had formerly done, and in a manner as it was necessary for him to do, his right arm below the elbow came in contact with the teeth of the ripsaw, and his arm and hand were thereby severely cut, lacerated and permanently injured, the bone of the arm being split. At the time of the accident he was engaged in pushing a yellow pine board into and through the saw. It appears that this board required hard pushing on the part of appellant in order to push it into and through the saw. On the witness-stand appellant was unable to state just how it happened that his arm came in contact with the saw. He could not positively say whether in pushing the board into and through the saw a soft place was struck which caused the board to be pushed into the saw more rapidly than usual. He could not state whether, while pushing the board, he slipped on the sawdust which had accumulated around the table and over which he had to walk to and fro in pushing and handling the board. It is shown that at the time of the accident he was operating the saw as he previously had done during the period of his employment. It was necessary in operat-

ing the saw at the time in question for his right arm to pass over and close to the unguarded teeth of the saw. He knew that the saw was unguarded at the time he was injured, and that it had been in that condition during the term of his employment.

In giving an account of the accident, appellant on the witness-stand, among other things, testified: "I know I pushed the piece almost through, probably I had pushed it through. I don't know whether I slipped—I couldn't say as to that, or I don't know how it was done; but it was done. It was done so quick that I could not tell enough to tell how it happened. It struck me just below the elbow, sawed to the bone and around the bone, jumping out and took the bone out." There is evidence in the case going to show that the sawdust from the lumber that was ripped by the saw would roll out from under the saw-table, and that quite a quantity thereof had accumulated around the table at which appellant was working at the time of his injury. There is evidence to prove that it was the duty of appellee to keep the sawdust removed from around and about the table. The sawdust, in working out from under the table while the saw was running, would accumulate in a pile sloping towards the table. It is shown that a man in operating the saw, under the circumstances, might slip by reason of this condition of the sawdust. When the sawdust would accumulate about the saw-tables in this manner, it appears that a man in operating the saw-table would be more likely or liable to slip in walking over the dust than he would be to slip on a slick floor. The evidence shows that it was practicable and possible for appellee to have guarded the saw in question by placing a guard or hood over it, and when so guarded the hands and arms of the person operating it would be protected and prevented from coming in contact with the teeth of the saw. It is shown that, had the saw been guarded, it could have been operated as easily with a guard as without. In using the saw with a guard thereon, the arm or arms of

the operator would pass over the top of the guard, the latter intervening between his arm and the teeth of the saw.

4. By §7087i, *supra,* it was made the imperative duty of the appellee, if possible, properly to guard the saws and machinery which it used in operating its planing-mill. Section 7087y Burns 1901, Acts 1899, p. 231, §25, declares that failure to comply with the provisions of the statute shall be deemed a misdemeanor punishable, upon conviction, by fine, etc. The following facts, under the evidence, are undisputed: (1) That appellee wholly failed, as exacted by the statute, to guard the saws which it used in its manufacturing establishment; (2) that appellant, in the line of his duty, was injured by reason of his arm and hand coming in contact with the unguarded saw at the time he was at work ripping the board in question; (3) that it was possible and practicable for appellee to have guarded the saw in question, thereby protecting the person engaged in operating it.

5. The manifest purpose of the statute is to protect the employes of manufacturing concerns against the dangers of saws, machinery and other instruments used therein. That, under the evidence, appellee is shown to be guilty of negligence in not properly guarding the saw as required by the statute, is beyond dispute. The facts show a failure on its part to perform the duty which, under the law, it owed to appellant as its servant. The disregard of this statutory duty, as a general rule, would constitute negligence *per se.* *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 152, 58 L. R. A. 944, and cases there cited.

6. In actions where the injuries or damages complained of are attributed to negligence, whether arising out of the failure of the defendant to discharge a statutory duty or otherwise, the fact that negligence is proved is not alone sufficient to render the defendant liable, but, in order to constitute the negligence actionable, it must appear that it was the proximate cause of the injury or damage sustained. Proximate cause is an essential factor in the case, and the

burden of proving it rests on the plaintiff. The contention of appellee's counsel that under the evidence appellant is shown to have assumed the risk incident to the negligence of appellee in not guarding the saw in question is untenable. Certainly it can not be held that he assumed the risk arising out of the neglect of appellee to discharge its duty under the statute. The mere fact that he knew that the saw in controversy was unguarded will not alone defeat his recovery in this action. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, and cases there cited; *Monteith* v. *Kokomo, etc., Co., supra; Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664; *American Rolling Mill Co.* v. *Hullinger.* (1904), 161 Ind. 673.

In the latter case the general rule as to the assumption of risks by a servant is distinguished in cases where a statute definitely points out the duty required of the master to protect or guard the safety of his servants. The further insistence of appellee's counsel is that it does not appear that the negligence of appellee was the proximate or real cause of the injury received by appellant. The argument they advance is that he must not only show negligence on the part of appellee, but that it must appear that such negligence was the proximate cause of his injury. This contention is in harmony with what we hereinbefore affirmed relative to this proposition. They assert "that he must show such a state of facts from which it may be inferred that the alleged negligence was the proximate cause of his injury." They say: "If he had slipped while working in a careful and proper manner, the appellee in this case would certainly be liable, because it could be said that it should have foreseen that appellant might slip in doing his work, and thus come in contact with the unguarded saw. If there had been a knot in the board, which coming on the saw suddenly, jerked appellant's arm upon the unguarded saw, then the appellee would clearly be liable in this case, if the jerking was done without contributory negligence of appellant. But appellant shows

nothing whatever which insulated or caused to become effect-ive the passive negligence of appellee."

We are advised by appellant's brief that the trial court directed the verdict on the ground that the evidence did not disclose the presence of an independent intervening act or circumstance to establish a causal connection between the failure of appellee to guard the saw and the injury sustained by appellant. It is further stated that the court was of the opinion that, had the evidence shown that appellant slipped while ripping the board in controversy, and his arm had in this manner come in contact with the unguarded saw, the case would then have been one to be submitted to the jury.

7. The trial court also appears to have entertained the view that, so far as there is any evidence in the case showing to the contrary, appellant may have carelessly caused his arm to come in contact with the saw. In regard to the question of contributory negligence, that issue, under §359a Burns 1901, Acts 1899, p. 58, was a matter of defense, and since the taking effect of that act the plaintiff in a personal injury case arising out of negligence is no longer required to show an absence of contributory negligence on his part, but the burden is cast upon the defendant to establish by a fair preponderance of all of the evidence in the case applicable to such issue, that the plaintiff was guilty of such negligence.

8. There is evidence going to show that appellant, at the time of the accident in controversy, was operating the saw in the usual and necessary manner, and that in performing his work his arm at times necessarily would be immediately over the saw. There is no positive evidence tending to show the existence of any intervening independent cause which proximately caused the injury. Appellant testified that at the time the accident occurred he was pushing hard against the board in question, as, under the circumstances, was necessary; that the accident occurred so quickly that he could not state just how it happened. There is evidence,

however, tending to support the view that he slipped on the sawdust which had rolled from under the table and accumulated about the machinery, as shown.   As previously stated, appellee's counsel concede that if appellant had, through no fault of his own, slipped, and thereby his arm had come in contact with the machine without his fault, appellee would be liable.   It is, as shown, undisputed that he was injured by his arm coming suddenly in contact with the teeth of the rip-saw, which was unguarded.   The accident may be said to be one which appellee might have reasonably anticipated or foreseen, and probably could have avoided by guarding the saw as the statute exacted.   It is not essential that the identical or precise injury sustained by appellant should have been expected or anticipated by appellee as the result of its negligent act.   It, by the exercise of reasonable care, might have foreseen or anticipated that from the negligent breach of its statutory duty, it was probable that injury of some kind might result to its employes engaged in operating the saw.   *Grimes* v. *Louisville, etc., R. Co.* (1892), 3 Ind. App. 573, and cases cited; *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583-591, 6 L. R. A. 193; *Louisville, etc., R. Co.* v. *Krinning* (1882), 87 Ind. 351; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; 21 Am. and Eng. Ency. Law (2d ed.), 487.

9.   The general rule affirmed by the authorities in an action for injuries or damages on account of negligence is that, if an efficient and adequate cause is shown, it may be considered as the real or proximate cause, unless another, not incidental to it, but independent thereof, appears to have intervened and caused the accident or injury in controversy. 4 Thompson, Negligence (2d ed.), §3857; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360.

10.   The proximate cause of an injury or wrong in a case based on negligence, as previously said, is an essential element therein, and in like manner as any other essential fact may, under the evidence, become a matter or question of law

for the court, or one purely of fact for the determination of the jury. *Terre Haute, etc., R. Co.* v. *Buck, supra;* 4 Thompson, Negligence (2d ed.), §3860.

In *Terre Haute, etc., R. Co.* v. *Buck, supra,* Elliott, J., speaking for the court relative to the question of damages resulting from negligence, said: "The only possible practical rule is that the wrongdoer, whose act is the mediate cause of the injury, shall be held for all the resulting damages, and that the question of whether his wrong was the mediate cause is one for the jury."

In the case of *Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24 L. Ed. 256, Mr. Justice Strong, speaking for the court, said: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments. * * * The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?" See, also, *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. —, 73 N. E. 824.

11. Again, to reassert, we have in the case at bar, among others, the undisputed fact that appellant, while engaged at work in the line of duty, was injured by his arm and hand coming in contact with the unguarded saw, in which condition he was required to use the saw. His claim is that under the evidence the injury which he sustained was the natural and probable result of the negligent act or omission of appellee in not guarding the saw as the law required, and that the occurrence of the accident in question was a

result which might have reasonably been expected or anticipated by appellee on account of its said negligence.

In 1 Thompson, Negligence (2d ed.), §50, the author says: "The general test as to whether negligence is the proximate cause of an accident is therefore said to be whether it is such that a person of ordinary intelligence should have foreseen that an accident was liable to be produced thereby. Proximate cause is, therefore, probable cause, and remote cause is improbable cause." As there is evidence going to sustain the proposition that appellee's negligence proximately caused the injury which appellant received, therefore the question as to proximate cause, under all of the circumstances in the case, was one for the jurors, and should have been submitted to them upon proper instruction by the trial court.

12.   It is a settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all of the evidence most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's right of action.  *Purcell* v. *English* (1882), 86 Ind. 34, 44 Am. Rep. 255; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385; *Wolfe* v. *McMillan* (1889), 117 Ind. 587; *Diezi* v. *Hammond Co.* (1901), 156 Ind. 583; *Wagner* v. *Weyhe* (1905), *ante,* 177, and cases there cited.

We are constrained to conclude that the court erred in directing a verdict for appellee, for which error the judgment is reversed, with instructions to grant appellant a new trial.