FARMERS AND MERCHANTS BANK OF HANNA ET AL. *v.*
PEOPLES TRUST AND SAVINGS BANK OF LAPORTE.

[No. 15,123.   Filed February 17, 1936.]

*Rees & Smith,* for appellants.

*Herman W. Sallwasser, Milton J. Sallwasser, Norman H. Sallwasser, Lemuel Darrow, Earl Rowley* and *C. V. Shields,* for appellee.

WIECKING, J.—This was an action by the appellants against the appellee to recover the value of certain bonds of the value of $9,450.00 and interest thereon and to collect from the appellee bank the amount of money which the appellant bank had paid to its customers and the interest thereon under a certain agreement alleged to have been entered into between the officers of the appellant bank and the officers of the appellee bank. The complaint upon which the action was tried consisted of five paragraphs, each alleging a different ground for recovery. The first paragraph of complaint is based upon simple conversion and charges the appellee bank with converting the bonds belonging to the customers of the appellant bank to its own use; the second paragraph of complaint proceeds upon the theory that the appellee bank was a gratuitous bailee of the bonds, and the third paragraph of complaint alleges the establishment of a bailment for mutual benefit. The second and third paragraphs of complaint were based upon substantially the same allegations as follows: That in November, 1923,

the appellant bank had in its possession Liberty Loan Bonds to the amount of $16,000.00 which were the property of the customers of the appellant bank. That on or about November 13, 1923, the appellant bank at the request of the appellee deposited these bonds in appellee bank for safekeeping. That thereafter certain bonds were withdrawn by the appellant bank until in November, 1926, the appellee had of the original bonds deposited for safekeeping, Liberty Bonds of the value of $10,950.00. In November, 1926, appellee informed the appellant bank that the appellee bank had been robbed in the daytime and that all of the bonds belonging to appellant's customers then in its possession had been stolen and taken from the custody of appellee. That appellee would not be able and could not deliver said bonds to appellant in accordance with their agreement. That since the date of said robbery the appellee has paid to the appellant bank the sum of $1,500.00, representing the par value of that number of bonds alleged to have been stolen. That appellants have demanded the return of said bonds or the value thereof but appellee has notified appellant bank that they do not have said bonds and will not deliver them to appellants and that said appellee still refuses to pay the value thereof. Each of said paragraphs asks damages of $12,000.00. In addition to the above facts the third paragraph alleges negligence on the part of the appellee in that the bonds in question were not cared for in the same manner as those of appellee and were not kept under a "time lock" but in a safe locked with an ordinary "combination lock," that the said safe was not open to view but was concealed from the street by curtains and that appellee bank did not carry insurance against robbery and burglary nor was it equipped with a burglar alarm system. The fourth and fifth paragraphs of the complaint alleged all of the facts above set out and also that after the rob-

bery in November, 1926, in consideration of the appellant bank refraining from pressing any claim against appellee or filing any action against appellee on account of said bonds, the officers of the appellee bank made an agreement with the officers of the appellant bank that appellee would reimburse appellant bank over a period of years for the loss occasioned by the robbery; that if any large amounts of bonds were called for, appellee would furnish them; that if bonds in small denominations, of $100.00 or less, were called for, and if the appellant bank had the money to pay for the same, the appellant bank would purchase such bonds for its customers as called for and the appellee bank would reimburse the appellant bank for the amounts which the appellant bank paid for said bonds. The fourth paragraph of complaint further alleges compliance with this agreement by both the appellee and the appellant bank and that pursuant thereto the appellee had paid the interest on the stolen bonds up to April 15, 1930, and had also paid $1,500.00 on the principal of the bonds. That the appellant bank had paid to its customers the sum of $2,450.00 pursuant to the said agreement in payment for such bonds stolen from appellee and that appellee had failed and refused to reimburse appellant bank therefor; that a demand for such sum and return of the balance of the bonds has been refused and prays judgment for $12,000.00. The fifth paragraph of complaint alleges all of the facts set out in the fourth paragraph of complaint and alleges that pursuant to the agreement above the appellant bank had taken up bonds belonging to its customers in small amounts and that at the time of filing of the complaint, the appellant bank had paid to its customers the amount of $2,450.00 for bonds which had been stolen from the appellee and claims that appellee owes the appellant bank the sum of $2,450.00 for money expended by the appellant bank

in payment of bonds which belonged to its customers. The defendants filed an answer in two paragraphs to the first three paragraphs of complaint, the first paragraph being in general denial, the second negativing any negligence in the care of the bonds and setting up the facts concerning the robbery. Appellee also filed an answer in two paragraphs to the fourth and fifth paragraphs of complaint, the first of which was in general denial and the second denied that appellant bank had ever contended appellee was liable to it for said loss by robbery, or that any agreement had ever been entered into, denied there was any reason or consideration for any agreement and that all statements and allegations of appellant bank as to such agreement to reimburse appellant bank or its customers for any loss in any manner were false. The appellants filed a reply in general denial to the affirmative answers and the case was submitted to a jury for trial. At the conclusion of the appellants' evidence, the appellee filed a motion for a directed verdict. The appellants at the same time made an oral motion to direct a verdict in their favor. Both requests for directed verdicts were denied by the court. At the conclusion of all of the evidence, the appellee filed another motion for a directed verdict in its favor, which instruction the court gave and, in accordance with such instruction, the jury returned a verdict for the appellee. During the pendency of this action, George H. Denison, one of the appellants, was appointed as trustee of the affairs of the Farmers and Merchants Bank of Hanna and this trustee was afterwards added as a party plaintiff to the action.

The only error set out in the assignment of error is the action of the court in overruling the appellants' separate and several motion for a new trial. The motion for new trial had eight specifications which are as follows:

"1. The Court erred in overruling the motion of plaintiffs for a directed verdict filed at the close of the plaintiffs' evidence.

"2. The Court erred in denying the request filed by the defendant and the plaintiffs herein for binding instructions, which motion was filed at the close of plaintiffs' evidence.

"3. The Court erred in permitting the defendant to introduce any testimony after the defendant had filed their motion for directed verdict, which motions were filed at the conclusion of the plaintiffs' evidence.

"4. The Court erred in sustaining the motion of the defendant for a directed verdict filed at the conclusion of all of the evidence in the case.

"5. The Court erred in instructing the jury to find the verdict for the defendant.

"6. The Court erred in submitting this case to a jury for a verdict after the plaintiffs and defendant had filed motions for a directed verdict.

"7. The verdict of the jury is not sustained by sufficient evidence.

"8. The verdict of the jury is contrary to law."

The first question presented is based on the alleged error of the court in overruling the motion of the appellants for a directed verdict filed at the close of the appellants' evidence and the request filed by the appellants and the appellee for binding instructions filed at the close of the appellants' evidence, raised by specifications one, two, three, and six as set out above.

After the filing of such motions, the appellee introduced evidence on its behalf and the appellant introduced evidence in rebuttal. Such action in introducing evidence waived their right to question the action of the court in overruling such motions.

"It is well settled that the right of a party to question the action of the court in overruling a motion to instruct the jury to return a verdict in his favor is waived, when such party introduces evidence in his behalf, after such motion is over-

ruled." *Bilskie* v. *Bilskie* (1919), 69 Ind. App. 595, 601, 122 N. E. 436. See also *Delphos Hoop Co.* v. *Smith* (1911), 176 Ind. 29, 95 N. E. 309; *Illinois Surety Co.* v. *State ex rel.* (1919), 69 Ind. App. 450, 122 N. E. 436. See also *The Baltimore, etc., Railway Co.* v. *Conoyer* (1898), 149 Ind. 524, 48 N. E. 352, 49 N. E. 452.

The second question is raised by the other four specifications numbered four, five, seven, and eight of the appellants' motion for new trial as set out above, that is, the error of the court in sustaining the motion of the appellee for a directed verdict led at the conclusion of all the evidence in the case, and in instructing the jury to return a verdict for the appellee.

In considering the question whether or not the court erred in instructing a verdict, only the evidence and inferences properly drawn from the evidence adverse to the moving party must be considered. It is only when the evidence introduced and the inferences properly drawn from such evidence wholly fail to establish an essential issue and such evidence is wholly insufficient to sustain a verdict in favor of the plaintiff that the court can properly direct a verdict for the defendant. *Lorber* v. *Peoples Motor Coach Co.* (1929), 89 Ind. App. 139, 164 N. E. 859; *West* v. *National Casualty Co.* (1916), 61 Ind. App. 479, 112 N. E. 115; *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 899; *Gulbranson* v. *Hart* (1929), 90 Ind. App. 171, 168 N. E. 483.

It is well settled in this state that the motion by the appellee for a verdict in its favor is equivalent to a demurrer to the evidence, *Curryer* v. *Oliver* (1901), 27 Ind. App. 424, 426, 60 N. E. 364, 61 N. E. 593, and "The court is bound to accept as true all the facts which the evidence tends to prove and as against the party demurring to draw from the evidence all such reasonable inferences as the jury might draw," and (2)

"If there is a conflict in the evidence, then only such evidence as is favorable to the party against whom the demurrer is directed can be considered, and that which is favorable to the demurring party is deemed to be withdrawn." *Curryer* v. *Oliver, supra,* and cases there cited.

With this rule in mind we must examine the evidence introduced with reference to the various paragraphs of complaint. The first three paragraphs of complaint upon which the action was tried were based upon bailment. The fourth and fifth paragraphs of complaint were based upon a contract. There is evidence to show that after the robbery the cashier of the appellant bank had some conversations with the secretary of appellee and with Earl Rowley, a director of appellee, a member of the legal or executive committee and the man in charge of all matters relating to the robbery. There is some question raised as to the authority of the secretary and Mr. Rowley to make an agreement with appellant bank's cashier, but there is also evidence to show that after the conversation in question, both banks acted in accordance with it. While the parties may have lacked authority to enter into an agreement, if the appellee by its conduct subsequently ratified the agreement, the agreement stands as an authorized one and makes the whole act, contract, or transaction good from the beginning.

"Ratification by a corporation may be shown by conduct without any formal action of its board of directors. Corporations act only by and through their officers and agents and *ratification may be inferred from affirmative or passive acquiescence, or from the receipts of benefits with knowledge.* Knowledge like other facts need not be proven by any particular kind or class of evidence and may be inferred from facts and circumstances. *Indiana Union Traction Co.* v. *Scribner* (1910), 47 Ind. App. 621, 93 N. E. 1014, and authorities cited;

*Wilson* v. *McKain* (1895), 12 Ind. App. 78, 39 N. E. 886; *American Quarries Co.* v. *Lay* (1905), 37 Ind. App. 386, 392, 73 N. E. 608; *Voiles* v. *Beard* (1877), 58 Ind. 510, 511." *National Life Insurance Co.* v. *Headrick* (1916), 63 Ind. App. 54, 58, 112 N. E. 559. (Our italics.)

We must next examine the agreement in question as to consideration. A contract to be enforceable must be founded upon a valuable and legal consideration. This may consist of some forbearance, loss, or responsibility given, suffered or undertaken by another party. The theory of appellants' complaint is based upon an agreement not to sue. This has been held to be sufficient consideration to support a contract. *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 96 N. E. 196; *Doan* v. *Dow* (1893), 8 Ind. App. 324, 35 N. E. 709; *Purviance* v. *Purviance* (1895), 14 Ind. App. 269, 42 N. E. 364; *Johnson* v. *Staley* (1904), 32 Ind. App. 628, 632, 70 N. E. 541. The consideration for the agreement goes back to the question of negligence on the part of the appellees in properly safeguarding the securities of the appellant bank left with appellee for safekeeping. This is also the question involved in the first three paragraphs of complaint. We believe that the question of care or of want of care exercised by the appellee in safeguarding the bonds in question was a question of fact for the jury to determine under all of the evidence in the case. There was some evidence that the securities and bonds of appellee were kept under a "time lock," while those left by appellant bank for safekeeping were in another compartment locked with an ordinary "combination lock." These facts together with all the circumstances surrounding the robbery were proper facts for the consideration of the jury in determining the question of due care.

From our examination of the evidence in this case under the rule announced by this court in *Curryer* v.

*Oliver, supra,* we must come to the conclusion that there was some evidence to support all the essential allegations of the complaint. The question of the weight to be given to the evidence or the sufficiency of the evidence was one for the jury. The court erred in directing the jury to return a verdict for the appellee and the appellants' motion for new trial should have been sustained.

Judgment reversed with instructions to grant appellants' motion for new trial.