[No. 11639.   Department One. — March 29, 1889.]

## JOHN H. TAYLOR, RESPONDENT, v. E. J. BALDWIN, APPELLANT.

NEGLIGENCE — PROXIMATE CAUSE — CONTRIBUTORY NEGLIGENCE. — INJURY FROM GAS EXPLOSION. — A proximate cause of an injury must be one without which the injury would not have occurred.   When the evidence in an action for negligence of the defendant causing a gas explosion, to the injury of the plaintiff, shows that an obstruction of the gas-pipe by a gunny-sack, complained of as constituting the negligence which caused the explosion, caused it only in the sense that it led the plaintiff, as superintendent in charge of the gas-works, to an experiment which directly and proximately caused the accident, and which no one but himself had authority to direct, and of the danger attending which he was fully aware, he alone is responsible for the injury sustained as the result of the accident.   The fact that he adopted the experiment at the suggestion of the contractor who originally constructed the gas-works, and another person, neither of whom had authority to represent the owner in making such suggestions, is immaterial, as he acted therein at his peril.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Lloyd & Wood*, for Appellant.

The risk of the accident was a risk incident to the employment in which the plaintiff was engaged. (*Mc-Glynn* v. *Brodie*, 31 Cal. 379; *Behm* v. *Armour*, 58 Wis. 203; *Chicago, Burlington, and Quincy Railroad* v. *Warner*, 108 Ill. 538; *Hayden* v. *Smithfield Mfg. Co.*, 29 Conn. 553, 558; *Coombs* v. *New Bedford Carriage Co.*, 102 Mass. 572; 3 Am. Rep. 506; *Sullivan* v. *The India Co.*, 113 Mass. 396; *Reading Iron Works* v. *De Vine*, 109 Pa. St. 253; *Seary* v. *Boston and Albany R. R. Co.*, 139 Mass. 580.) The plaintiff, having accepted and filled the position of superintendent and engineer of the gas-works, was presumed to know and did know the manner of their construction, and all the dangers attendant upon their use, and knew that if he took the weights out of the bucket the receiver would tip over. And he knew that the fires in the furnaces, used to make the gas, would set any escaping gas on fire, and would be likely to injure him, causing not only damage to him, but destruction of his employer's property and severe loss to his employer, and it was his duty to prevent any such accident; and he took the risk thereof. (*Reading Iron Work* v. *De Vine*, 109 Pa. St. 253; *Abend* v. *Terre Haute and Ind. R. R. Co.*, 111 Ill. 202, 210; *Stone* v. *Oregon City Mfg. Co.*, 4 Or. 52; *Palmer* v. *Harrison*, 57 Mich. 182; *District of Columbia* v. *McElligott*, 117 U. S. 633; *Hearst* v. *Burnside*, 11 Or. 528; *Wormwell* v. *Maine Central R. R. Co.*, 79 Me. 403; *Gaffney* v. *N. Y. & Erie R. R. Co.*, 15 R. I. 458; *Glascock* v. *C. P. R. R. Co.*, 73 Cal. 140, 141.) The law only regards the proximate cause of an injury. (*Craven* v. *C. P. R. R. Co.*, 72 Cal. 347; *Lewis* v. *Flint*, 54 Mich. 66; 52 Am. Rep. 790.)

*Hall & Rodgers*, for Respondent.

Defendant was bound to furnish suitable appliances, and to keep the pipe leading to the hotel free from obstructions. Having failed in his duty, he is responsible.

(*Beeson* v. *Green Mountain Mining Co.*, 57 Cal. 20; *Leahy* v. *S. P. R. R. Co.*, 65 Cal. 150; *McKune* v. *Cal. S. R. R. Co.*, 66 Cal. 302; *Trask* v. *Cal. S. R. R. Co.*, 63 Cal. 96; *Rodgers* v. *C. P. R. R. Co.*, 67 Cal. 607; *Brown* v. *Sennett*, 68 Cal. 225; 58 Am. Rep. 8; *Corcoran* v. *Holbrook*, 59 N. Y. 517; 17 Am. Rep. 369; *Fuller* v. *Jewett*, 80 N. Y. 46; 36 Am. Rep. 575; *Pantzar* v. *Iron M. Co.*, 99 N. Y. 368; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240; 14 Am. Rep. 598; *Northern Pac. Co.* v. *Herbert*, 116 U. S. 642; *Rice* v. *King Philip Mills*, 144 Mass. 229; 59 Am. Rep. 80; *Greene* v. *M. & St. L. R. R. Co.*, 31 Minn. 248; 47 Am. Rep. 785; *Pidcock* v. *Union P. R. R. Co.*, 19 Pac. Rep. 191; *Columbia etc. R. R. Co.* v. *Hawthorn*, 19 Pac. Rep. 25.) The plaintiff was not guilty of contributory negligence. There is no evidence that he knew of the condition of the pipe, nor that removing the weights was attended with any danger. To have constituted contributory negligence, he must have known not only the defects, but the dangers to him. (*Sanborn* v. *Madera Flume Co.*, 70 Cal. 261; *Colbert* v. *Rankin*, 72 Cal. 197; *Columbia R. R. Co.* v. *Hawthorn*, 19 Pac. Rep. 25.) The servant is not bound to inspect machinery. (*Little Rock R. R. Co.* v. *Leverett*, 48 Ark. 333; 3 Am. St. Rep. 230.) The master must inform the servant of dangers latent and patent. (*Smith* v. *Peninsular Car Works*, 60 Mich. 501; *Railroad Co.* v. *Irwin*, 37 Kan. 701; *Stahlendorf* v. *Rosenthal*, 30 Wis. 674; *Wheeler* v. *Mason Mfg. Co.*, 135 Mass. 294.) The finding of the jury upon the subject of contributory negligence is conclusive. (*Fernandes* v. *Sac. City R'y Co.*, 52 Cal. 45; *McKune* v. *R. R. Co.*, 66 Cal. 302; *Smith* v. *Peninsular Car Co.*, 60 Mich. 501; *Luke* v. *Mining Co.*, Mich., July 11, 1888; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441; *Thorpe* v. *Mo. R. R. Co.*, 89 Mo. 650; 58 Am. Rep. 120; *Keegan* v. *Kavanagh*, 62 Mo. 321.)

PATERSON, J.—The defendant constructed gas-works in the city of San Francisco, and laid pipes therefrom to

his hotel, theater, and market, to supply the same with gas. Everything worked well for a few weeks, but gradually the flow of gas decreased, and at the end of two months it had almost entirely ceased. It was thought that the pressure was not sufficient, and plaintiff, who was superintendent of the works, acting upon the suggestions of others, was attempting to increase the pressure by taking the weights out of the buckets attached to the gasometer, when the latter tilted up on one side, allowing the gas confined within it to escape. The escaping gas as soon as it reached the furnace ignited, and communicating with that in the gasometer, the whole exploded with great force and violence, throwing the defendant out of the building, and across the street against the fence, burning his hands, face, neck, and other portions of his body in the most deplorable manner.

Plaintiff seeks in this action to recover damages in the sum of ten thousand dollars for the injuries sustained by him, alleging that in consequence of the explosion he was disabled from attending to any business for about nine weeks; that his hands and face have been permanently scarred and disfigured, the joints of his fingers permanently stiffened, and that his nerves have become permanently weakened in consequence of the shock.

The *gravamen* of the complaint is, that the defendant carelessly and negligently constructed and maintained the gas-works; that he negligently permitted a gunny-sack to remain in one of the gas pipes leading to the hotel, causing a stoppage of the flow of gas, and a consequent resistance against the gasometer, resulting in the explosion. It is also claimed in the complaint that the gasometer was not properly weighted, ballasted, or supported by timbers.

It is established by the evidence, beyond all controversy, that the accident was caused by taking the weights out of the bucket, thus removing the balance from the

receiver, and permitting it to tip over. There is no evidence whatever to the contrary. One of the witnesses said: "The sack in the pipe would have no effect at all upon the holder; if you were to put a valve on the pipe and shut the gas off absolutely, it would have no effect upon the holder. There is no such thing as a back pressure on the holder. . . . . You cannot press anything back into the pipes and raise the holder. There is no back pressure to the gasometer, whether the pipe is stopped or whether it is open. It does not make any difference in the pressure of the gas. . . . . If the outlet pipe is stopped, and the gas continues flowing into the receiver, it rises. . . . . The fact that the gas receiver tipped up at the side where the outlet pipe is, was not the cause of any reaction from the outlet pipe. It is a matter of physical impossibility for the gas to come back through the outlet pipe." This evidence is nowhere contradicted.

The evidence is equally conclusive in support of appellant's contention that the utmost care and caution was used by the defendant in the construction of the works. Nothing was spared to make them perfect in every respect. The defendant did not claim to know anything about the proper construction of the works, but it is undisputed that he employed the best mechanics and engineers, and adopted the most approved methods.

The evidence does not show how the gunny-sack came to be in the gas pipe. The defendant claimed that it was put there by some enemy, maliciously to injure him. (There was great opposition to the construction of the works.) Plaintiff claimed that it was left there by the workmen who laid the pipe, it being the custom to stop up the open end of the pipe in the evening as the work progressed, to prevent obstructions from entering it. But it is unnecessary to a determination of the rights of the parties here to inquire how it came in the pipe, it being clear, we think, that the stoppage of the pipe was not the

proximate cause of the accident. A proximate cause must be one without which the accident would not have occurred; and as shown by the uncontradicted evidence, the accident could not have occurred by the resistance of the gas upon the gasometer from the outlet pipe.

The only sense in which it can be said the gunny-sack caused the accident is that it led to the experiment which resulted in the accident. It simply led to a belief that a greater pressure was needed. If reasonable skill and care had been exercised in the attempt to secure a greater pressure, the accident would not have occurred, notwithstanding the presence in the pipe of the gunny-sack.

But it is claimed by respondent that the plaintiff was merely obeying the orders of his superior in taking the weights out; that he (plaintiff) was acting under the directions of Condict, the engineer who built the works for defendant, and McAbee, to whom the defendant had referred the plaintiff, and who was Baldwin's representative; but there are two answers to this contention: 1. Plaintiff had sole charge and control of the works as superintendent,— no one had authority to order or direct him as to the manner of running the works; and 2. The plaintiff was fully aware of the danger attendant upon the removal of the weights from the balance-tub.

The plaintiff was employed by Condict, the contractor, to assist in constructing the works and placing the machinery. He remained until the job was finished, and the works turned over to and accepted by Baldwin, in August, 1881, at which time Condict's connection with Baldwin ceased. Condict testified (and his testimony is not contradicted): "I had nothing to do with Taylor, or Mr. Baldwin, after that. What I said to Mr. Taylor was a suggestion; it was merely advisory. I had no power to discharge Mr. Taylor. I had nothing whatever to do with the works at the time. It was simply a matter of friendly advice; because I put up the works it was

supposed I knew more about them. He was simply seeking information from me in relation to what suggestions I would make, and I made the suggestion to Mr. Taylor." The defendant testified that after the works were turned over to him, Condict had nothing to do with them; that he never employed him after that, or authorized him to make any suggestions about the pressure on the gas. McAbee, according to plaintiff's own testimony, had authority simply to furnish him (plaintiff) anything which was "required to run the works." The evidence shows that McAbee was a general utility man about the hotel. He testified that all he had to do was simply to buy fuel and oil, or anything there was to buy, when Mr. Taylor wanted it. He certainly had no power to hire or discharge the plaintiff. The plaintiff himself testified that he was turned over to Baldwin by Condict as superintendent to run the works. He testified: "I manufactured gas for Baldwin. I had sole charge of the building at the time in the daytime only. I know how I was employed by Baldwin for that purpose. Mr. Condict turned me over to Mr. Baldwin when he turned the works over, as I understood, to run the works. . . . . I never had any conversation about my qualities to take charge of the works. I knew Mr. Condict had turned the works over to him, because he told me so, and he told me I was to continue on the same as I was, but in the employment of Mr. Baldwin, *and in charge of the gasworks. . . . . I continued as superintendent of the works regularly along down to the time of the explosion.* I was not superintendent at night."

The defendant testified that the plaintiff was turned over to him as a first-class man and engineer, capable of taking charge of the works, and that he paid him for that, and gave him full charge of the works during the day. He further testified that McAbee had no authority beyond the purchase of coal and oil and other materials, whenever Mr. Taylor needed them as supplies for the gasworks.

That plaintiff was fully aware of the danger attendant upon the removal of the weights from the balance-tub is apparent from his own testimony, wherein he says that he assisted in constructing the works, and that he took items as the works went np. He said: "I did not assist in putting in the tank or receiver. I saw the men putting the ropes on them, balancing them; it was balanced by the bucket or tub; the guys or ropes they put on ran through the pulleys under the cross-beams and attached to the tub. . . . . I saw the men balancing it; they put the weights in the tub for the purpose of taking some of the pressure off the holder. The weights balanced the holder. . . . . They put it up five or six sheets, when it upset. . . . . It could not tilt on either side when it was swung up by the guys; it could not swing either way when the guys were on it. If it did tilt, I would take up one of the guys. . . . . I knew there were no supports around the holder, and that it was balanced by the guy ropes. I knew it was balanced by the ropes and the weights in the tub. If the weights were taken out of the bucket or tub, the receiver would tip over. I had charge of them."

It is claimed by counsel for respondent that the witness, in making these statements, was speaking from information acquired after the accident occurred. It does not appear so from the language as printed in the transcript; on the contrary, it appears quite plain, we think, that the plaintiff was speaking of his knowledge of the workings of the gasometer and its attachments at the time the accident occurred; and we could not, without placing a strained construction upon the testimony, sustain the respondent in his contention.

If we are right in our view of the evidence, the verdict of the jury is against the evidence, and contrary to the instructions of the court. As the case is presented to us, it appears that the plaintiff has no one to blame for the injuries he has sustained but himself. He took

charge of the works knowing the dangers of the employ-
ment, and that the defendant relied upon his skill and
knowledge in the business. He acted upon the suggestions
of Condict and McAbee at his peril. They had no
authority from the defendant to direct him in his work,
and the defendant cannot be held responsible for the re-
sult of their conference with plaintiff.

Judgment and order reversed, and cause remanded for
a new trial.

McFARLAND, J., and BEATTY, C. J., concurred.