## EVANSVILLE HOOP AND STAVE COMPANY *v*. BAILEY.

[No. 6,260. Filed April 21, 1908. Rehearing denied October 7, 1908. Transfer denied January 15, 1909.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Unguarded Saw.* —*Proximate Cause.*—A complaint alleging that a servant was working at an unguarded saw and that his foot slipped causing him to fall and his arm to be caught on such saw, to his injury, shows that the failure to guard the saw was the proximate cause of his injury. pp. 156, 160.
2. PLEADING.—*Complaint.*—*Averments.*—The averments of a complaint must be direct. p. 156.

Evansville Hoop, etc., Co. *v*. Bailey—43 Ind. App. 153.

3. MASTER AND SERVANT.—*Unguarded Machinery.—Negligence.*— The failure to guard dangerous machinery, as required by section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231), constitutes negligence *per se.* p. 156.

4. NEGLIGENCE.—*Proximate Cause.*—The proximate cause of an injury is that cause from which an injury should reasonably have been anticipated, and without which the injury would not have occurred; and it does not cease to be such because of intervening events concurring to bring the injury about. p. 157.

5. NEGLIGENCE.—*Proof.—Anticipation of Injury.*—Proof that defendant was negligent, and that, as a result thereof, the plaintiff sustained injuries, is sufficient, without showing that the consequences of such negligence could have been foreseen. p. 157.

6. PLEADING.— *Complaint.— Negligence.— Proximate Cause.— General Allegations.*—A general allegation that plaintiff's injuries were caused by the negligence of defendant, without pointing out the specific acts thereof, is insufficient. p. 158.

7. STATUTES.—*Factory Act.—Purpose.*—The purpose of section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908) was to prevent injuries to servants by compelling factory owners to guard their dangerous machinery. pp. 159, 164.

8. TRIAL.—*Instructions.—Master and Servant.—Unguarded Saw.*— An instruction, in a personal injury case, that if the saw upon which the plaintiff was injured was not properly guarded, that if it could have been guarded without interfering with its efficiency, that if the plaintiff was in the line of his duty at the time, and if the injury would not have occurred if the saw had been guarded, the verdict should be for the plaintiff, is correct. p. 161.

9. TRIAL.—*Instructions.—Considering All the Facts.—Damages.— Master and Servant.*—An instruction, in a personal injury case, that in assessing damages the jury should consider every phase of the injury, loss of time, ability to earn money, permanent impairment, pain, both physical and mental, past and future, and personal disfigurement, and give such a sum "as will compensate [plaintiff] for the injuries received, taking into consideration all the facts proved in the case," is correct. p. 161.

10. MASTER AND SERVANT.— *Dangerous Machinery.— Unguarded Saw.—Proximate Cause.—Evidence.*—Evidence showing that a servant in working near an unguarded saw, which could have been guarded without injury to its efficiency, accidentally slipped and fell against such saw, to his injury, sustains a verdict for plaintiff. p. 162.

11. MASTER AND SERVANT.—*Unguarded Saw.—Anticipation of Injury.*—It can reasonably be anticipated that servants working at an unguarded saw may accidentally fall against same. p. 163.

12. NEGLIGENCE.— *Proximate Cause.— Unguarded Saw.— Slipping and Falling.*—Where a servant working at an unguarded saw

slipped and fell against such saw, the failure to guard the saw, and not the slipping of his foot, is the proximate cause of the resulting injury. *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, distinguished. p. 165.

13.  NEGLIGENCE. — *Contributory.* — *Unguarded Saw.* — *Slipping.* — *Question for Jury.—Appeal.*—Whether a servant was guilty of contributory negligence in his position and in the manner of conducting his work, whereby he slipped and fell against an unguarded saw is a question for the jury, whose verdict thereon is conclusive on appeal. p. 167.

From Posey Circuit Court; *Walter S. Jackson,* Special Judge.

Action by Albert Bailey against the Evansville Hoop & Stave Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals. *Affirmed.*

*Elmer E. Stevenson* and *Andrew J. Clark,* for appellant.
*W. D. Hardy, G. K. Denton, W. D. Robinson* and *William E. Stilwell,* for appellee.

RABB, J.—The appellee sued appellant to recover damages for personal injuries alleged to have been caused by appellant's negligence. Appellant's demurrer to the complaint was overruled, an answer of general denial filed, the cause tried by a jury, and a verdict returned in favor of appellee. Appellant's motion for a new trial was overruled, and judgment rendered in favor of appellee on the verdict.

The rulings of the court on the demurrer to the complaint and motion for a new trial are assigned as errors here.

The complaint averred in substance that defendant was, at the time of the accident to plaintiff, engaged in the manufacture of barrel hoops, and that plaintiff was in its employ; that, at the date named, plaintiff was assigned by defendant to the work of off-bearing at a certain table where a gang-saw was operated; that while in the proper discharge of the duties of his employment he was injured in the following manner: "About 3:30 o'clock in the afternoon of said day, while the plaintiff was engaged in the performance of the duties of his employment at said table and saw where

his duties were performed, his foot slipped on the floor, causing him to lose his balance and fall; that in falling his left hand and arm struck the top of said saw, which was open and exposed, without any guard around or above it to prevent his hand and arm from coming in contact therewith; that in striking said saw with his left hand and arm said hand and arm were so severely lacerated and injured that it was necessary to amputate said arm; * * * that said saw could have been guarded by defendant without interfering with the use thereof; * * * that the defendant carelessly, negligently and unlawfully failed to have said saw properly guarded at said time, in violation of the law of the State of Indiana, and that said injury to plaintiff was caused solely by the negligence of the defendant.''

The point is made against the sufficiency of the complaint that it fails to show by direct averment or necessary inference that the negligence charged against appellant 1. was the proximate cause of the appellee's injury, and many authorities are cited in support of appellant's contention.

That it must affirmatively appear from the averments of the complaint that the injury complained of was proximately caused by the negligence charged, admits of 2. no controversy. The question presented is, does this fact appear from the direct averments of the complaint, or the necessary inferences arising therefrom?

Section nine of the acts of 1899 (Acts 1899, p. 231, §8029 Burns 1908), being the factory act, requires that all saws used in manufacturing establishments shall be ''properly guarded,'' and a failure on the part of the 3. owner of such establishment properly to guard a saw used in such establishment, that could be properly guarded without interfering with its efficient use, is negligence *per se*. *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290; *Nickey* v. *Dougan* (1905), 34 Ind. App. 601; *Espen-*

*laub* v. *Ellis* (1904), 34 Ind. App. 163; *Blanchard-Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398.

Proximate cause is that act which immediately causes or fails to prevent an injury that might reasonably have been anticipated would result from the negligent act or

4. omission charged, and without which such injury would not have occurred. 1 Thompson, Negligence (2d ed.), §§56, 58; *Deming & Co.* v. *Merchants Cotton-Press, etc., Co.* (1891), 90 Tenn. 306, 313, 17 S. W. 89, 13 L. R. A. 518; *Lindvall* v. *Woods* (1891), 44 Fed. 855; *Ring* v. *City of Cohoes* (1879), 77 N. Y. 83, 89, 33 Am. Rep. 574; *Laidlaw* v. *Sage* (1899), 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; *Taylor* v. *Baldwin* (1889), 78 Cal. 517, 21 Pac. 124; *Simons' Admr.* v. *Southern R. Co.* (1898), 96 Va. 152, 31 S. E. 7; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136; *Mexican, etc., R. Co.* v. *Mussette* (1894), 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; *Gonzales* v. *City of Galveston* (1892), 84 Tex. 3, 19 S. W. 284, 31 Am. St. 17; *St. Louis, etc., R. Co.* v. *McKinsey* (1890), 78 Tex. 298, 14 S. W. 645, 22 Am. St. 54; *Seale* v. *Gulf, etc., R. Co.* (1886), 65 Tex. 274, 57 Am. Rep. 602; *Weick* v. *Lander* (1874), 75 Ill. 93; *Brown* v. *Wabash, etc., R. Co.* (1886), 20 Mo. App. 222.

The test is to be found in the probably injurious consequences which were to be anticipated, and not in the number of subsequent events and agencies which might arise to bring such consequences about. 1 Thompson, Negligence (2d ed.), §§58, 59, and cases cited.

It is not required in order to fix appellant's liability, after its negligence has been established and resulting injury to the appellee, to show, in addition thereto,

5. that the consequences of appellant's negligence could have been foreseen. It is sufficient that it be shown that the injuries are the natural, though not the inevitable, result of the appellant's negligent fault; such injuries as in ordinary circumstances are likely to ensue from the act

or omission charged. 1 Thompson, Negligence (2d ed.), §59; 1 Bailey, Per. Inj., §1030; 1 Shearman & Redfield, Negligence (5th ed.), §29; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544; *Clore* v. *McIntire* (1889), 120 Ind. 262; *Meredith* v. *Reed* (1866), 26 Ind. 334; *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230; *White Sewing Machine Co.* v. *Richter* (1891), 2 Ind. App. 331; *Bohrer* v. *Dienhart Harness Co.* (1898), 19 Ind. App. 489; *Schumaker* v. *St. Paul, etc., R. Co.* (1891), 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257; *Christianson* v. *Chicago, etc., R. Co.* (1896), 67 Minn. 94, 69 N. W. 640; *Hill* v. *Winsor* (1875), 118 Mass. 251; *Hoepper* v. *Southern Hotel Co.* (1898), 142 Mo. 378, 44 S. W. 257; *Miller* v. *St. Louis, etc., R. Co.* (1886), 90 Mo. 389, 2 S. W. 439.

The complaint undertakes to make out a case against appellant for failure to comply with the provisions of the statute referred to, and it is not questioned but that the complaint states facts sufficient to show negligence on the part of the appellant in failing properly to guard the saw, as required by the law. It also sufficiently appears that the appellee was injured by his hand and arm's coming in contact with the unguarded saw. But appellant contends that this is not sufficient, and that these facts do not show that appellant's failure properly to guard the saw was the proximate cause of the injury complained of. There is a general allegation in the complaint that appellee's injury was caused solely by the negligence of the defendant, without referring to what acts of negligence. We agree with appellant that this is an insufficient statement of fact to show that the negligent acts and omissions charged in the complaint were the proximate cause of appellee's injury. There is no formal averment in the complaint that the negligence charged was the proximate cause of the injury complained of, nor does the complaint, in so many words, aver that the saw that injured appellee could

have been so guarded as to prevent the particular injury suffered by appellee. The statute upon which the action is founded simply requires that the saw or other dangerous machine be "properly guarded," without specifying in what manner the same is to be guarded, or what dangers are to be guarded against, nor does it in express terms designate what persons or things are designed to be protected by its provisions. What is meant, therefore, by the term "properly guarded," must be determined by a proper construction of the statute.

It is a matter of common knowledge that, owing to the spirit of invention and the demands of business, the use of powerful, swiftly-moving and dangerous machinery 7. in manufacturing establishments in this country has been constantly growing at an ever-increasing rate for many years, and at the same time the casualty list from accidents resulting from the use of such machinery has been constantly swelling until at the date of the passage of this law it had reached alarming proportions. Both the title of the act, which declares it to be "An act concerning labor, and providing means for protecting the liberty, safety and health of laborers," etc., and the provisions of the law, clearly show that this condition of affairs was in the legislative mind in the enactment of this law, and was an evil sought to be remedied thereby. Its obvious purpose, among other things, was to reduce the hazard to those employed about dangerous machinery, to protect them from injury by accidental contact therewith, and it was evidently designed to protect the employe not only from unavoidable accidents, but from his own negligent and careless acts which might result in his injury from accidental contact with such dangerous machinery. Not that the law gives to the employe a new right or remedy against his employer for such injuries, or in anywise relieves him from his common-law duty to exercise reasonable care to protect himself. Its

purpose is to prevent injury, not to give a right or remedy for its occurrence. *Davis* v. *Mercer Lumber Co., supra; Nickey* v. *Dougan, supra; Espenlaub* v. *Ellis, supra.*

The complaint avers that "the saw could have been guarded by defendant without interfering with the use thereof." The negligence charged against defend-

1. ant in the complaint is that the "defendant carelessly, negligently and unlawfully failed to have said saw properly guarded at said time, in violation of the law of the State of Indiana." What is a person of common understanding bound to know was meant and intended by these terms? We think that in the connection in which they are used, and the meaning this statute imports to them, the appellant company was bound to understand that the appellee thereby charged that said appellant failed and neglected so to guard the saw in question as to protect the appellee from accidental contact therewith, to his injury, and that the saw could have been so guarded without interfering with its use. This being the meaning of the terms directly employed in the complaint, descriptive of appellant's negligence, and it being further directly averred that the saw was open and exposed, without any guard around or above it to protect appellee's hand and arm from coming in contact therewith, and that the appellee, without fault on his part, slipped and fell, and in falling his hand and arm struck the saw and he was injured, we think the inference necessarily follows that the appellant's negligence in failing properly to guard the saw was the immediate and efficient, and therefore the proximate, cause of appellee's injury complained of. *Byard* v. *Harkrider* (1886), 108 Ind. 376; *Douthit* v. *Mohr* (1888), 116 Ind. 482; *Malott* v. *Sample* (1905), 164 Ind. 645; *Evansville, etc., R. Co.* v. *Darting* (1893), 6 Ind. App. 375.

The grounds of appellant's motion for a new trial are the insufficiency of the evidence to sustain the verdict, and

error of the court in giving instructions one and four, requested by appellee.

Instruction one reads as follows: "The court instructs you that if you find from the evidence that the saw upon which the plaintiff was injured was not properly guarded, and that it was possible and practicable for the defendant to guard said saw without interfering with its efficient use, and that the plaintiff was in the line of his duty at the time of his injury, and that if said saw had been properly guarded the plaintiff would not have sustained the injury complained of, you should find for the plaintiff, unless you further find that the plaintiff was guilty of negligence contributing to his injury." The same criticism urged against the complaint is urged against this instruction: That is, that it leaves out of consideration the question of proximate cause. We think that this instruction, as applied to the evidence in the case, is not subject to the criticism urged against it, for the reasons we have given in sustaining the sufficiency of the complaint. If the saw in question could have been so guarded, without affecting its efficient use, that appellee would not have met with the accident, and because appellant failed so to guard it the appellee, without fault or negligence on his part, fell upon it and was injured, there could be no possible room for inference that his injury was not proximately caused by such negligence. An instruction in practically the same language was held good by this court in the case of *Tucker & Dorsey Mfg. Co.* v. *Staley* (1907), 40 Ind. App. 63.

Instruction four complained of is as follows: "If you find, under the evidence and the rules of law I have given you, that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages which, in your judgment, he should recover. In assessing this amount every particular and phase of the injury may enter into the consideration of the jury in estimating plain-

tiff's damages, loss of time with reference to his condition and ability to earn money in his business or calling, his loss from permanent impairment of his physical powers, his pain and suffering, both physical and mental, already endured and that may be endured from his injuries in the future, his personal disfigurement, and the jury should give the plaintiff such a sum as will compensate him for the injuries received, taking into consideration all the facts proved in the case.'' This instruction was copied literally from an instruction approved by the court in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 301, and has since been approved by the Supreme Court in the case of *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467, and these cases are decisive of the question raised against the instruction.

It is earnestly insisted that the evidence is insufficient to sustain the verdict. The facts disclosed by the evidence were that the appellee, a young man twenty-two years of age, was employed by appellant. Said company was engaged in the manufacture of hoops and staves, and in this work certain saws were used to cut the material to the proper dimensions. One of these saws was a bolting saw used to cut the material from slabs into strips about two inches square. This saw was attached to a mandril which turned underneath a table. The saw protruded above the table and was located at one end thereof. The table was about six feet long and three feet wide. At the other end of the table was a set of gang-saws, attached to the same mandril, used to cut the bolts into strips of the proper dimensions to make hoops. These gang-saws protruded above the table, the largest one some two and one-half inches. The appellee worked at this table as an off-bearer, taking the hoops and the bolts away from the saw as they were cut. At the time the injury occurred he had been working at the gang-saw, taking the hoops from the saw as they were cut. He stood upon one side of the table and the sawyer

upon the other. He worked under the direction of the sawyer, and was in duty bound to obey the sawyer's instructions. At the time of the accident to appellee they were not cutting hoops. They had suspended work for a moment. The sawyer not being well had left the room in which they were engaged. On leaving the room he said to appellee: "Clean up around here." There was on the table at the time some debris arising from the work, and, while appellee was engaged in cleaning this off, in some manner his foot slipped, he fell, and his arm struck the saw and was so cut and lacerated that it had to be amputated. The saw was unguarded. It might have been guarded without interfering with its efficient use in such manner as would have prevented the accident that befell appellee. At the time the appellee slipped and fell, his knee was against a heavy weight called an idler, used to take up the slack in the belt that operated the mandril to which the saws were attached. Appellee was unable to state what was the cause of his losing his balance, but thought that it must have been the idler. It is the contention of appellant that these facts show that the proximate cause of appellee's injury was the slipping of his foot, and not the negligence of appellant in failing properly to guard the saw. It is argued that the company had no reason to anticipate such an accident as occurred to appellee, and even though it were guilty of negligence in failing to protect the saw with proper guards, yet if the accident which occurred was one that could not reasonably have been anticipated, it would not be liable.

Conceding that if the injury were one that could not have been reasonably anticipated the appellant company would not be liable, do the facts shown in the evidence warrant the assumption that the accident could not have been anticipated? We have already shown the test of proximate cause is to be found in the probably injurious consequences which were to be anticipated from the

negligent act or omission. Here the negligent omission charged was the failure of appellant to guard the saw. What were the probably injurious consequences that were reasonably to be anticipated from such an act of negligence? Were they not that some workman employed about the saw would accidentally come in contact therewith, and be thereby hurt? It seems to us that the inquiry answers itself, and that there can be no room to question that such were the injurious consequences to be anticipated from such an act of negligence. It appears to this court that the character of the mischance or accident that brings about the contact between the person of the victim of the accident and the saw could not, on this question, be important; that the injury to be anticipated from the negligent act is too clear to admit of serious contention, and that the question of the intervening agency or mischance—that is, the intervening accident by which the employe is made the victim of the employer's negligence—ought not to be controlling. It is true that before any injurious consequence could arise from the negligence of the employer in failing to guard a saw some intervening accident must occur that would bring the employe in contact with the saw, and the concurrence of such intervening accident and the negligence of the employer would produce the injurious result. But the fact that there is some other agency present, operating and concurring with the negligence of the employer, could not operate to relieve such employer from the consequences of his negligence which he was bound to anticipate.

As we have before stated, it was the purpose of the law to prevent injuries to employes working around dangerous machinery. If the saws were properly guarded no

7. injury could come to an employe falling upon them, whatever might have caused the fall. The statute was predicated on the assumption that accidents were liable to happen by which those engaged in work about unguarded saws might fall upon them and be hurt. It was this result

the law was designed to prevent, regardless of the nature of the intervening accident or mischance that might bring it about, and of this legislative purpose and the reason for its ·enactment the employer is bound to know, precisely as he is bound to know the law; and for the court to hold that the employer may ignore the provisions of the law, leave unguarded his dangerous machinery, about which his employes are required to work, that could be guarded without interfering with its efficiency, and after an accident has happened to one of his employes, by which he is severely injured through falling into the unguarded machine, without fault on his part, say: "It is true, I knew the law was designed to protect my employe from the very injury he has received, and had I obeyed the law he would not have been hurt, but I could not have anticipated that his foot would slip, or his hand would slip, or that he would meet with any other specific mischance while engaged in his work about the machines and come in contact therewith, and am not therefore liable." So to hold is to destroy the efficacy of the law.

It is claimed the slipping of appellee's foot was the proximate cause of the injury, and that the unguarded and exposed saw was a mere condition. It is true that the slipping of appellee's foot was a proximate cause of his injury, and it was an immediate cause of his injury, but it was not the sole, proximate, immediate and efficient cause of his injury. The exposed saw, while it was a condition, was a proximate, immediate and efficient cause of the injury complained of; and that there were two causes concurring, as we have before stated, in noway relieves the company. The appellee's foot slipped and he fell in consequence. Had the saw been absent, no injury would have resulted, or if the saw had been protected, as the law required it to be, no injury would have resulted from the slipping of the foot or the fall. It was the buzz-saw that tore the appellee's arm off, and not the slipping of his foot,

It was the immediate and the efficient cause of the injury. The slipping of the foot was an incident that gave appellant's negligence opportunity to work the appellee harm.

We are referred by counsel to the case of *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, as being a case in point decisive of the question under consideration. We think this case is clearly distinguishable from the case at bar. Without undertaking to reconcile this opinion with all that is said by the learned judge who delivered the opinion of the court in that case, we think that the facts of the two cases are so entirely different as clearly to distinguish them. The court in that case expressly recognized the rule that if the natural and probable consequence of the defendant's wrongful act or omission could reasonably have been foreseen, it would be, except for contributory negligence on the part of the plaintiff, liable, and that one is bound to anticipate and provide against what usually happens or what is likely to happen. As we have before shown, the statute in question contemplates accidents of the kind which happened to this appellee, and that the employer is bound to anticipate such accidents as the statute contemplates should be guarded against. Here it is shown by the evidence that appellee was engaged in the performance of his ordinary duties. Taking, as we are bound to take, that evidence most favorable to appellee, and it is shown that he was engaged at the time of his injury in cleaning off the table through which the saw protruded; that this he was doing in obedience to instructions from his superior, under whose direction he was required to work. It is shown that in some way, not accounted for, his foot slipped and he lost his balance, and in falling his hand and arm were caught on the unprotected saw. It is true he knew the saw was unprotected; but the statute imposing the duty upon the employer to guard it relieves the employe from the assumption of this open and apparent hazard, and it cannot be said in this case, as a matter of law, that the circumstances that the ap-

pellee, or some other employe engaged in work about this saw, might slip and fall against it was so remote and unlikely to happen that it ought not reasonably to have been anticipated.

It is claimed, too, that the evidence shows that the appellee was guilty of contributory negligence, because it is asserted that the evidence shows that at the time his foot slipped and he fell he was standing with his leg against what is called an "idler," and that this idler caused his fall. The appellee could not certainly tell what was the cause of his losing his balance and falling. He thought it was the fact that his leg was against the idler, but as to this he was not certain; but whether he was guilty of contributory negligence in standing with his leg against the idler, or in the manner in which he was proceeding to clear off the table, or doing any other thing which he did, was, under the evidence, clearly a matter for the jury, and not for the court, and their decision of that question adverse to the appellant is conclusive. We think that no reversible error is apparent in the record.

The judgment of the court below is affirmed.

Roby, C. J., absent.