## KINGAN AND COMPANY *v.* ALBIN, ADMINISTRATRIX.

[No. 9,800. Filed June 18, 1919.]

1. APPEAL.—*Review.*—*Ruling on Motion for Judgment on Interrogatories.*—*Scope of Review.*—In determining the correctness of the action of the trial court in overruling defendant's motion for judgment on the interrogatories, the court on appeal can consider only the complaint, answer, general verdict and answers of the jury to the interrogatories. p. 496.

2. APPEAL.—*Review.—Verdict.—Answers to Interrogatories.—Presumptions.*—The general verdict necessarily determines all the material issues in favor of the successful party, ,and, unless the answers to the interrogatories disclose facts so inconsistent with the general verdict that they cannot be reconciled with it under any conceivable state of facts provable under the issues, it must prevail; all presumptions being indulged to sustain the general verdict, but none in favor of the answers to the interrogatories. p. 499.

3. MASTER AND SERVANT.—*Injuries to Servant.—General Verdict.— Answers to Interrogatories.*—In an action for the death of a packing-house employe, killed in a hog-scraping machine, where the general verdict was for plaintiff, the jury's answers to interrogatories cannot be construed as showing that the voluntary act of the deceased was the proximate cause of his death in the absence of any findings disclosing how the accident happened. pp. 501, 503.

4. MASTER AND SERVANT.—*Injuries to Servant.—Failure to Guard Dangerous Machinery.—Negligence Per Se.*—Failure to guard a dangerous machine, as required by statute, where it is practicable to do so without destroying its usefulness, generally constitutes negligence *per se.* p. 502.

5. MASTER AND SERVANT.—*Injuries to Servant.—Answers to Interrogatories.—Contributory Negligence.*—In an action for the death of a packing-house employe killed in a hog-scraping machine, answers to interrogatories showing that the accident was caused by deceased being struck by an iron bar, but not showing what he was doing at the time, *held* not to show that he was guilty of contributory negligence. p. 503.

6. APPEAL.—*Review.—Answers to Interrogatories.*—In determining whether the jury's answers to interrogatories are sufficient to overthrow the general verdict, the court on appeal must accept the answers as being true. p. 504.

7. TRIAL.—*Interrogatories.—Duty of Jury.—Failure to Agree.—Discharge.*—When there is any evidence on the subject embraced in an interrogatory, it is the duty of the jury to make answer thereto in accordance with the preponderance of the evidence, but in ·the absence of evidence on the subject-matter of an interrogatory, the jury has the right to answer, "No evidence," and, if the jury is unable to agree upon the answers to interrogatories, the court should discharge it on account of such disagreement, the same as where the jury fails to agree on a general verdict. p. 506.

8. TRIAL.—*Special Interrogatories.—Refusal to Submit.—When Harmless.*—A party submitting proper interrogatories has the right to have them answered fairly and fully, but it is not available error for the court to refuse to require the jury to retire and

Kingan & Co. *v.* Albin, Admx.—70 Ind. App. 493.

make more definite answers, where the answers demanded would not, if given, change the result of the judgment rendered. p. 506.

9. TRIAL.—*Special Interrogatories.—Answers not Sustained by Sufficient Evidence.—Remedy.*—If the jury's answers to interrogatories are not sustained by sufficient evidence, the remedy is by motion for new trial, and not by motion to require the jury to make further answers. p. 507.

10. MASTER AND SERVANT.—*Injuries to Servant.—Failure to Guard Dangerous Machinery.—Directing Verdict.*—In an action for the death of a packing-house employe killed in a hog-scraping machine alleged not to have been guarded as required by statute, the refusal of the court to direct a verdict for plaintiff was proper, where the evidence conclusively showed that the machine was not guarded, and that it could have been guarded without interfering with its usefulness. p. 508.

11. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Burden of Proof.*—In an action against the master for the wrongful death of a servant, the burden of proving contributory negligence is on the master. p. 508.

12. APPEAL.—*Review.—Refusal of Instructions.*—It is not error to refuse requested instructions which are fully covered by others given. p. 509.

13. APPEAL.—*Review.—Refusal of Instructions.—Inapplicability to Evidence.*—In an action for wrongful death due to unguarded machinery, a requested instruction that the owner of dangerous machinery was under no obligation to guard it while repairs were being made, although correct as an abstract proposition of law, was properly refused, where there was no evidence to which it was applicable. p. 509.

14. APPEAL.—*Review.—Harmless Error.—Incorrect Instruction.*—In an action for wrongful death, the giving of an instruction incorrectly defining the "burden of proof" was not reversible error, in the absence of any claim that the jury was thereby misled to the disadvantage of appellant. p. 511.

15. NEGLIGENCE.—*Proximate Cause.*—Proximate cause is an act which immediately causes or fails to prevent an injury which might reasonably have been anticipated would result from such negligent act or omission. p. 511.

16. MASTER AND SERVANT.—*Injuries to Servant.—Action.—Evidence.—Sufficiency.*—In an action for the death of a packing-house employe killed in an unguarded hog-scraping machine, evidence *held* sufficient to justify a finding that deceased slipped and fell into the machine while stooping over to take something from under it, and that, if the machine had been guarded, the accident would not have happened. p. 512.

From Marion Superior Court (97,567); *James A. Ross*, Special Judge.

Action by Matilda Albin, administratrix of the estate of Anthony Albin, deceased, against Kingan and Company. From a judgment for plaintiff, the defendant appeals. *Affirmed*.

*Samuel D. Miller, Frank C. Dailey* and *William H. Thompson,* for appellant.

*Louis H. Flinn* and *J. R. Cauble,* for appellee.

McMahan, J.—This was an action for damages commenced by the appellee, as administratrix of the estate of Anthony Albin, to recover damages sustained by reason of the death of said Anthony Albin, alleged to have been caused by the negligence of appellant in failing to guard a certain hog-scraping machine. The case was tried by a jury, and resulted in a verdict and judgment in favor of appellee. The jury, in connection with their general verdict, answered certain interrogatories. The appellant's motion for judgment on the interrogatories notwithstanding the general verdict was overruled. Appellant filed a motion for a new trial, setting out thirty-seven specifications or reasons why a new trial should have been granted. This motion was overruled, and the errors assigned are that the court erred: (1) In overruling the motion for judgment on the interrogatories and answers thereto; and (2) in overruling the motion for a new trial.

In determining the correctness of the action of the court in overruling appellant's said motion for judgment, we can only consider the complaint, answer, general verdict and answers of the jury to the interrogatories. *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26, 74 N. E. 611.

The complaint, after alleging that appellant is a corporation doing business in this state and that appellee is the duly appointed and qualified administratrix of the estate of Anthony Albin, reads as follows: "Plaintiff further avers that on the 11th day of February 1913, and for some time prior thereto, said defendant company was and is still engaged in the manufacture of meat products, pork-packing, and the general meat business in the city of Indianapolis, Indiana. That on the 11th day of February, 1913, and for some time prior thereto said defendant company had in its employ the said Anthony Albin, deceased, and more than five other employes." Plaintiff further avers that said decedent, Anthony Albin, was employed by said defendant company as a machinist, and as such machinist had charge of a certain machine and conveyor known as a "hog-scraping machine" and "hog-conveyor"; that it was his duty as such machinist to repair, adjust, clean and keep in order said hog-scraping machine and hog-conveyor and to run, and operate said machine and conveyor. That said hog-scraping machine and hog-conveyor was composed of a series of sharp knives, sprockets, chains, gears, shafting and belting and was and is a dangerous machine and dangerous conveyor; that said machine and conveyor was unguarded and that there was no guard of any kind, character or description upon said machine and conveyor; that said machine and conveyor was operated by said defendant company in violation of the laws of the State of Indiana pertaining to unguarded machinery; that it was practicable to guard said machine and hog-conveyor without rendering it practically useless for its intended purpose.

"This plaintiff further alleges and says that on the 11th day of February, 1913, said decedent was attending said machine and conveyor and in conformity with the orders of said defendant company and that said machine and conveyor was being operated by said defendant company on said date. That while said decedent was so engaged about said machine and conveyor, and while in the line of his duties, said decedent fell into, upon, against, and came in contact with said dangerous, unguarded machine and conveyor, thereby crushing and lacerating his head, cutting off his skull, lacerating and tearing his right arm near the shoulder joint, killing him instantly. That said injuries and death resulted from the negligence and carelessness of the said defendant company in operating, and permitting and suffering to be operated said dangerous, unguarded machine, contrary to law as aforesaid. Plaintiff further avers that said decedent received the above described injuries which resulted in his death by the negligence and carelessness of the said defendant company in permitting, suffering and allowing and ordering said decedent to work upon or about said dangerous, unguarded machine and conveyor; that said injuries and death resulted wholly through the negligence and carelessness of the said defendant company as above described."

It is also alleged that said decedent left surviving him his widow, Matilda Albin, and eight children; that said widow and two of the children were dependent upon him for their support, and demanding damages.

The answer was a general denial.

It is well settled that the general verdict necessarily determined all the material issues in favor of the

appellee, and, unless the answers to the inter-
rogatories disclose facts so inconsistent with
the general verdict that they cannot be recon-
ciled with it under any conceivable state of facts prov-
able under the issues, the court did not err in over-
ruling the motion for judgment on the answers to the
interrogatories. No presumptions are to be indulged
in favor of the answers to the interrogatories, but all
reasonable presumptions will be indulged to sustain
the general verdict. *City of Jeffersonville* v. *Gray,
supra.* The reason for this rule is well stated in *City
of South Bend* v. *Turner* (1901), 156 Ind. 418, 60 N. E.
271, 54 L. R. A. 396, 83 Am. St. 200, as follows: "The
jury is required to pronounce upon *all* the issuable
facts proved in the case, while the court in testing the
force of isolated facts disclosed by answers to inter-
rogatories does not know, and cannot know, what
other facts touching the same matters were rightfully
before the jury to justify their verdict. Therefore,
in conceding to the jury the presumption of right
judgment, to overthrow its general verdict, the special
facts returned must be of such a nature as to exclude
the possible existence of other controlling facts, prov-
able under the issues, relating to the same subject."

The jury, by their answers to the interrogatories,
found the facts to be substantially as follows: Dece-
dent was the foreman in charge of the machinery in
question, and had been in charge of such machinery
for many years; it was a part of his duty to make
repairs to such machine, and just prior to his injury
he and his assistant had finished doing so; he then
told his assistant to start the machine; to do so it was
necessary for decedent's assistant to pass out of his
sight; said assistant, when starting the machine, was

not at a place where decedent could see him; when he directed his assistant to start the machine, decedent was standing several feet from the place where he met his death. It was necessary for decedent, in order to put himself in a position where he could come in contact with said machine, to walk several feet from the place where he was last seen alive; the portion of the machine in which the accident occurred was upon a raised platform above which were two iron or steel shafts, one about 9½ inches above the other; the platform below these shafts was about one foot, 5½ inches above the floor at the south end and was about eleven inches above it at the north end. There was a wooden bar known as the shifter bar about 11½ inches south of the lower shaft; the accident was caused by decedent being struck on the head by an iron bar attached between two descending chains; decedent and his assistant had been inside said machine on said platform a short time before the accident to adjust said machine, which was not in motion at the time they were in the same prior to the accident. Had there been a gate or door north of the machine, it would have been necessary to have opened or removed said gate or door in order to enter the machine to make repairs; decedent was familiar with the mechanism of the machine; the machine was five feet, ten inches wide; the platform on which shafting stood was about four feet, eleven inches deep from north to south. The distance between the two sprocket chains was about two feet and eight inches, and from the sprocket chains to the outside of the north edge of the platform was one foot and seven inches. The bars on the sprocket chains were about nine feet and six inches apart; the chains when in motion moved

about 142½ feet a minute; the machine was started and stopped by a shifter lever which was on the platform nine feet above the floor, said platform being reached by a stairway; from the top of such stairway to the shifter lever was about twelve feet and three inches; the repair which decedent and his assistant had made consisted in replacing the sprocket chains on the sprocket wheel; decedent had often made this repair. Decedent had full authority to order this machine stopped or started at any time he deemed it desirable or necessary. Decedent could not have been in the position he was when injured had there been a door, gate, or other guard at the north end of said machine without opening or removing said door or other guard. Decedent did not have the authority, if he thought it necessary or desirable that the north end of said machine be guarded, to see that a guard was placed thereon; nor did he at any time cause a guard to be placed thereon, or suggest to defendant's construction department that the same be done. On several occasions prior to the accident in question, decedent had attempted to adjust said machine while same was in motion; when the chains were in operation they moved at a rate of speed such that fifteen bars would pass a given point per minute; these bars were about nine feet apart; the lower of the two shafts moved from south to north.

The appellant first contends that the "answers to the interrogatories show that the failure to guard the machine was not the proximate cause of the accident because they show that if the machine had been guarded the decedent could not have placed himself in the position he was in when the accident occurred without removing the guard." Argu-

ing from this premise, appellant says that a guard would not have afforded any protection against the accident, as the voluntary act of the deceased must have been the proximate cause of his death. The objection to this contention is that appellant's logic is at fault. Not only is appellant's logic at fault, but the facts as found do not support its contention. The answers of the jury do not show what the deceased was doing when killed. There are no facts found to justify the conclusion that the accident was the result of any voluntary act of the deceased. In view of the general verdict, it would be more reasonable to say that the injury was the result of some involuntary act on the part of decedent, such as accidentally falling or slipping on a wet floor in passing alongside the unguarded machine.

The answers of the jury to the interrogatories do not disclose any facts or state of facts that throw any light on how the accident happened. Whether the deceased went back to the machine, after his assistant went upstairs, and started it for the purpose of watching it so as to see that it was in working order and slipped and accidentally fell into it, or whether he attempted to make some adjustment on the machine is not disclosed.

It will not do to say what might or might not have happened, or how it might have happened if the machine had been guarded. The answer to appellant's contention is that the jury by their general verdict found that the machine was not guarded, and that it was practicable to have guarded it without practically destroying its usefulness for the purpose for which it was intended. Such a failure is a

4.    plain breach of the duty owing to the employe, and generally constitutes negligence *per se.*

*Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind.
3.   149, 64 N. E. 610, 58 L. R. A. 944; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E.
899.   The purpose of the legislature in enacting the statute requiring dangerous machinery to be guarded was to prevent accidents. The jury by their general verdict found that the absence of a proper guard was the proximate cause of the accident. Such a conclusion and finding is not unwarranted. To hold that the absence of such a guard cannot be the proximate cause of an injury would be to destroy the statute. A proper guard might not have prevented the accident, but it would have relieved appellant from all liability on account of a failure to comply with the statute. As said by this court in *Tucker, etc., Mfg. Co.* v. *Staley* (1907), 40 Ind. App. 63, 80 N. E. 975: "So far as the question of proximate cause is concerned, it is not necessary that appellant should have anticipated the particular injury which resulted. *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413. It is quite sufficient that the performance of the statutory duty might, and as the jury found would, have prevented it. The question, as before stated, was one of fact, and no amount of logic authorizes us to disregard the verdict."

The appellant also contends that the answers of the jury to the interrogatories show that the deceased was guilty of negligence which contributed to
5.   his death. This contention is based upon the theory that the deceased was working with the machine while it was in motion, and that he ought to have stopped the machine before undertaking such work. We cannot agree with appellant in this contention. The facts as found do not show that deceased

was working with the machine, or attempting to do anything with it, at the time of the accident. They only show that the deceased and his assistant had been making some repairs or adjustments a short time before the accident; that they had the repairs completed; that the assistant had gone upstairs and started the machine, at which time the decedent was standing several feet from the machine; that the accident was caused by deceased being struck on the head by an iron bar attached between two descending chains on the machine. There are no facts showing what the deceased was doing, or that he did, or failed to do anything that could be construed as showing that he was guilty of contributory negligence.

Several interrogatories were submitted to the jury, the purpose of which was to elicit facts showing that the deceased was guilty of contributory negligence, and which, if answered in favor of appellant, would have shown deceased guilty of negligence, which was the proximate cause of the accident, but the jury answered each of these interrogatories, ''No evidence.'' In determining whether the interrogatories and the answers thereto are sufficient to overthrow the general verdict, we are not concerned about the truthfulness of the answers. We must accept them as being true. There are no facts found by the jury showing that deceased was guilty of contributory negligence. There was therefore no error in overruling appellant's motion for judgment on the interrogatories.

Did the court err in overruling appellant's motion for a new trial?

When the jury returned into court with their general verdict and answers to the interrogatories appel-

lant filed a motion asking the court to require the jury to retire and make further answers to interrogatories Nos. 11, 13, 15, 18, 19, 20, 23, 27, 41, 48, 53 and 54. This motion was sustained as to Nos. 18, 19, 20, 27, 48, 53 and 54, and overruled as to Nos. 11, 13, 15, 23 and 41. The jury, having retired, again returned into court with their general verdict and answers to interrogatories, and appellant filed another motion asking the court to require the jury to retire and make further answer to interrogatory No. 54, which motion was overruled. The action of the court in refusing to require the jury to make further answer to interrogatories Nos. 11, 13, 15, 23, 41 and 54 is set out as ground for a new trial.

These interrogatories and the answers thereto are: (11) Did the decedent, immediately before the accident in question, voluntarily step upon the platform? A. No. evidence. (13) Did decedent put his head between these two shafts while the machine was in motion? A. No evidence. (15) Did the decedent step upon said platform at the north end? A. No evidence. (23) Would the accident have occurred if decedent had caused the machine to be stopped before going into it at the time of his accident? A. No evidence that he went in at the time of accident. (41) Upon each occasion when this repair or adjustment was made, did the decedent or his assistant or both of them, go into the machine from the same direction that decedent entered it immediately prior to the accident in question? A. No evidence. (54) When said machine was in motion was such fact perfectly obvious to one looking at it when within eight feet from the north end thereof? A. No evidence. (This is the first answer returned to said interrogatory No. 54.)

The jury reconsidered No. 54, and made the answer thereto read as follows: ''No evidence as to eight feet,'' and after being so answered, the court refused to require the jury to retire again and make further answer to such interrogatory.

Appellant's motion was that the jury be required to retire and make further answer to each of said interrogatories for the reason that ''there was evidence introduced in the course of the trial from which each of said interrogatories could and should have been answered otherwise than as they were answered.'' Appellant insists that each of these interrogatories was proper, and that there was evidence on the subject inquired about in each interrogatory; that Edward McCloud, who was one of appellant's witnesses, testified as to the facts asked about.

If there is any evidence on the subject embraced in an interrogatory, it is the duty of the jury to answer such interrogatory in accordance with the preponderance of the evidence. If the jury are unable to agree upon the answers to interrogatories, the court should discharge the jury on account of such disagreement, the same as in a case where the jury fails to agree on a general verdict. If there is no evidence on the subject embraced in the interrogatory, the jury then has the right to answer, ''No evidence.'' *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435, 67 N. E. 183.

7.

A party submitting proper interrogatories has the right to have them answered fairly and fully (*Indiana Union Traction Co.* v. *Swafford* [1913], 179 Ind. 279, 100 N. E. 840), but it is not available error for the court to refuse to require the jury to retire and make more definite answers, if the

8.

answers demanded would not, if given, change the results of the judgment rendered. *Cleveland, etc., R. Co.* v. *Asbury* (1889), 120 Ind. 289, 22 N. E. 140.

Appellant's real contention is not that the answers are defective or indefinite, but that they are not sustained by the evidence. If the answers of the 9. jury to interrogatories are not sustained by sufficient evidence, the remedy is by motion for a new trial, and not by motion to require the jury to make further answers. There was therefore no error in overruling the motion to require the jury to make further answer to said interrogatories. *Frank Bird Transfer Co.* v. *Krug* (1903), 30 Ind. App. 602, 65 N. E. 309

The appellant next contends that the answers to interrogatories Nos. 46, 53 and 54 are not sustained by sufficient evidence. These interrogatories and answers are as follows: (46) Did the decedent have the authority, if in his opinion it was necessary or desirable that the north end of said hog-scraping machine should be guarded, to see that a guard was placed thereon? A. No. (53) Did the accident occur while the decedent was attempting to make some adjustment of said machine while the same was in motion? A. No. (54) When said machine was in motion was such fact perfectly obvious to one looking at it when within eight feet from the north end thereof? A. No evidence.

It is clear that, even though the jury had answered Nos. 46 and 54 in the affirmative, such answers would not have controlled the judgment. A different judgment would not have been rendered as a result of such affirmative answers.

Interrogatory No. 53 is double. The evidence showed without conflict that the machine was in mo-

tion at the time of the accident, but there was no evidence that the deceased was making any adjustment of the machine at the time of the accident. The evidence without conflict showed that the chains which operated the machine had been thrown off the sprocket wheel; that the machine had been stopped; that the deceased and his assistant had loosened the take-ups, put the chain back on the sprocket wheel, and tightened the take-ups; that all adjustments and repairs had been made before the accident. No witness testified that the deceased was making any adjustments of the machine at the time of the accident. The only witness who claimed to have seen the accident did not testify that the deceased made any adjustment, or attempted to make any adjustment, after the machine was started. The statement of the witness was that the deceased stepped on the platform and stooped over as if he were going to rake something out, and that the witness supposed he was raking hog hair. The jury might truthfully have answered this question by saying that there was no evidence that the deceased was attempting to make any adjustment of the machine at the time of the accident.

Complaint is next made of the refusal of the court to give certain instructions tendered by appellant.

Instruction No. 1, tendered by appellant, asked the court to instruct the jury to return a verdict for appellant. This was properly refused. The evidence conclusively showed that the machine which caused the death of deceased was not guarded, and that it could have been guarded without in any manner interfering with its usefulness. One witness testified to a state of

facts which would have justified the jury in finding that the deceased was guilty of contributory negligence, but there were circumstances surrounding this testimony which might have warranted the jury in not believing the witness. The burden of proving contributory negligence was on appellant.

Instructions Nos. 3, 4, 7 and 9, tendered by appellant, were fully covered by the instructions given by the court. No. 8 was properly refused, as there was no evidence to which it was applicable. By this instruction the court was asked to instruct the jury that there was no obligation on the owner of dangerous machinery to guard it while repairs were being made. This is correct as an abstract proposition of law, but the evidence was uncontradicted that the repairs or adjustments of the machine were completed before the accident, and that the deceased and his assistant had left the machine. There is no evidence that the deceased afterwards undertook to make any repairs, or that he was making any repair or adjustment when he was killed.

Instruction No. 3, given by the court on its own motion, was in part as follows: "By burden of the proof is meant a preponderance of the evidence. Such preponderance is not necessarily the greater number of witnesses testifying to any one fact, but the evidence applying to that particular fact which is greater in weight and credibility.

"If after considering all the evidence in the cause you should find that the evidence on any given question is evenly balanced, you should find on that question against the party having the burden on such issue, for in such case there would be no preponderance in favor of such proposition."

The definition of the "burden of proof" is not correct, but there is no claim that the giving of this 14. instruction misled the jury to the disadvantage of appellant. Its giving was not reversible error.

Instruction No. 6 was as follows: " 'Proximate cause' may be defined as an act which immediately causes or fails to prevent an injury which 15. might reasonably have been anticipated would result from such negligent act or omission." This is a correct statement of the law. *Evansville Hoop, etc., Co.* v. *Bailey* (1909), 43 Ind. App. 153, 157, 84 N. E. 549.

We have examined all the instructions given of which complaint is made, and find no reversible error.

The next contention of appellant is that the verdict is not sustained by sufficient evidence. That the appellant was negligent in failing to guard the machine that caused the deceased's death is not seriously questioned. The evidence, without conflict, is that it was not guarded, and that it could have been guarded without interfering with its usefulness; that the machine was stopped while the deceased and his assistant made some adjustments; that when the adjustments were made the assistant stepped to his place about twelve feet from the machine, and out of sight of the deceased, and started the machine; that after the machine had been running about two or three minutes the assistant heard a noise as if something was wrong with the machine; that he stopped the machine and went to investigate, finding the deceased, head foremost in the machine dead. The only question remaining in the case for further consideration is whether the deceased was guilty of negligence

which proximately contributed to his death. The burden of proving contributory negligence was on the appellant.

Edward McCloud was a witness for appellant, and was the only witness who claimed to have been present and to have seen the accident. At the time of the trial he was a prisoner in the Marion county workhouse, and his testimony was given in a deposition which was read to the jury. He testified that he was thirty-seven years of age; that he was working for appellant at the time the deceased was killed; that he saw the accident; that when he first saw the deceased, he, deceased, was standing right down in front of the hog-scraper and was off the platform and about three feet from the machine; that he had just come out from under there and told his helper, Arnold Cornelius, to start the machine; that the helper went upstairs and started the machine; that the reason witness was down on the floor where the accident happened was that the machine was stopped, and that he just walked around downstairs looking around; after the helper went upstairs the deceased stopped there a few moments looking, and then he went ahead and went under the machine like he was going to rake something out; that was after he told the assistant to start it; he had been under there once, and had come out and told his assistant to start it; that is when he went back the second time; there was the machine and iron rods that go across and a little platform that he could step on; the platform was about two feet wide and not over 1½ feet high; he just stepped on the platform and stuck his head right down under there when his foot slipped; the machine was going then; had been going about five minutes; he

stuck his head under there like he was raking something out; supposed he was raking hog hair; saw the thing catch him; saw his foot slip and he fell in the machine; he was taken out dead; his head was cut off; stood there and watched him five minutes; saw him two or three minutes before the machine started; he walked up there to work in the machine; he was through working on the machine; was raking something out from under there when his foot slipped; he stuck his head in between two rods there; is all he saw. Witness said that he "hollered 'there is a man in the machine.'"

Appellant contends that the deceased was attempting to make some repairs or adjustments on the machine while it was in motion and that, even if the same had been guarded, that would not have prevented the accident. The objection to this argument is that it is simply a conjecture. It is a sufficient answer to say that there is no evidence that deceased was attempting to make any repairs or adjustments at the time of his death. The jury were justified in finding that he stooped over to rake something out from under the machine, and that in so doing he slipped and fell into the machine, being instantly killed, and that, if there had been a gate or guard in front of the machine, as explained by the witnesses, the accident would not have happened.

We find no reversible error in the record. Judgment affirmed.